D. S. GALBRAITH ET AL. V. HOWARD & HUME, ADMINISTRATORS, ET AL. No. 1916.

**1. Trespass to Try Title—Evidence of Locative Contract.**

Where, in trespass to try title, plaintiffs claim the land under and by virtue of a locative contract made by an administrator, direct evidence of which could not be adduced, it was permissible, as tending to prove that such contract was made, to give in evidence the proceedings had in the administration, showing that a land certificate was part of the estate and was delivered for location by such administrator to plaintiffs' intestate, the locator, and that the land was partitioned without objection among and between the heirs of the estate and the locator, the maps filed therewith showing the part allotted to the locator in such partition.

**2. Same—Sufficiency of Circumstantial Evidence.**

The evidence indicated above, with further proof showing that the heirs acquiesced for many years in such partition, that the locator paid all taxes during his life on the part allotted to him, and that his claim of title was a matter of notoriety, held sufficient to establish the locative contract and title in the locator thereunder.

**3. Administrator's Locative Contract—Land Certificate—Community Property.**

The contract of an administrator of the husband, made with the approval of the court, for the location of a land certificate on shares, is valid, and is also binding on the wife's community interest.

**4. Administration Proceedings—Validity—Time of Administration Extended.**

The orders and proceedings in an administration had from 1844 to 1854 cannot be assailed on the ground that under the law then in force an administration could not be continued for more than one year from the date of issuance of the letters, unless so ordered by the court, and that in no event could it be continued for longer than five years. Following Williams v. Howard, 10 Texas Civ. App., 527.

**5. Limitation—Specific Performance.**

In an action to establish title under a locative contract, and partition proceedings thereunder, the statute of limitations requiring actions for specific performance to be commenced within ten years cannot be interposed. The patentee of the land holds the legal title in trust for the benefit of the locator, and until a repudiation of the trust limitation will not run.

**6. Limitation—Tenant as Party to Suit.**

Where a claimant of land holds possession by a tenant, and such tenant is made a party defendant to a suit brought to recover the land, this is sufficient to interrupt the running of limitation in favor of such claimant.

**7. Bona Fide Purchaser—Insufficient Evidence.**

The evidence is sufficient to sustain a finding that defendant was not a bona fide purchaser, where it shows that in certain partition proceedings one-third of the survey of land, being the part here in controversy, had been set off as the locative interest; that defendant's wife inherited an interest in the remaining portion, which had been set off to her father in that partition; that defendant and his wife conveyed the part so inherited by deed with reference to such partition,

and by another deed, without consideration, and with reference to the partition, conveyed such locative interest to parties who secured deeds thereto from the other heirs, and from whom defendant subsequently purchased such locative interest.

### 8. Plea of Improvements in Good Faith.

A purchaser chargeable with actual notice of a valid outstanding title is not entitled to claim the value of improvements in good faith, especially where his plea does not state the ground upon which such claim is based.

### 9. Evidence Sustaining Finding.

A finding that a certain person died after a partition of land, is sustained by evidence showing that the decree in the partition proceedings recited that such person appeared therein by attorney and joined in the prayer for partition, and a decree setting apart a portion of the land to such person as one of the parties entitled thereto.

### 10. Partition—Estoppel.

Where the heirs of a person to whom land was set apart in a partition accept the portion so allotted to their ancestor, they are estopped to attack the regularity of the proceedings.

### 11. Deposition—Evidence of Party to Suit—Disclaimer.

Where, in trespass to try title, certain of the defendants are charged with a conspiracy to defeat plaintiff's title by procuring the legal title to the land to be vested in an innocent purchaser, the plaintiff is entitled to take the depositions of such defendants with reference to such issue of fraud by filing interrogatories under the statute, without notice, although such defendants have disclaimed title to the land.

### 12. Innocent Purchaser—Notoriety of Claim.

Where the plea of innocent purchaser is made, it is admissible to show the notoriety of the adversary claim of title to the land.

### 13. Trespass to Try Title—Disclaimer—Rental Value.

Where, in trespass to try title, defendants filed a disclaimer, this will not absolve them from liability for the rental value of the land during the time they occupied it, not exceeding two years, but each defendant will be liable only for the time he occupied.

### 14. Same—Subrogation—Liens.

Where plaintiff recovers land which has been fraudulently incumbered by defendants with deeds of trust, a decree providing that if plaintiffs are compelled to discharge the liens, they shall be subrogated thereto as against the defendants, is properly entered.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Baldwin & Lomax* and *Yancy Lewis*, for appellants.—1. Under the laws in force in the Republic of Texas from 1836 to July 2, 1846, an administration on a deceased person's estate could not be continued for more than one year from the date of the issuance of letters of administration, unless ordered by the court to be continued for a longer period, and, in no event could the same be continued for a longer period than five years, and when the administration was so continued it was necessary for the administrator to give a new bond. Hartley's Digest, art. 983; Civil Code of La., arts. 1179 to 1199; 1 Sayles' Early Laws of Texas, 369, sec. 32; Murphy v. Menard, 14 Texas, 65; Dodge v. Phelon, 2 Texas Civil App., 441; Boyle v. Forbis, 9 Texas, 36; Portis v. Cummings, 14 Texas, 139; Flores v. Howeth, 5 Texas, 331.

2. An administrator acting under the probate law of 1848, or the law prior thereto, had no power to make a contract with a locator to locate a land certificate owned by the estate administered by him,

for one-third interest of the land located for his services, without an order of the County Court that appointed him, authorizing him to make such a contract, and, there being no order of this kind offered in evidence, his contract, if any, was illegal and void, and the court erred in admitting said probate proceedings for the purpose of showing such a contract. 2 Sayles' Early Laws of Texas, 165 to 197, art. 1902, secs. 135, 69, 68, 56, 61 to 67; Paschal's Digest, art. 4642; 1 Sayles' Early Laws of Texas, 380, art. 737; Stone v. Ellis, 69 Texas, 325; Williams v. Co. of San Saba, 59 Texas, 444; Harris v. Brower, 3 Texas Civil App., 649; Ross v. Mitchell, 28 Texas, 150; Sypert v. McCowen, 28 Texas, 636; Burris v. Wideman, 6 Texas, 231; King v. Casey, 22 Texas, 412; Glasgow v. McKinnon, 79 Texas, 116; Hamilton v. Pleasants, 31 Texas, 638, 640; Scott v. Atchison, 36 Texas, 76; 7 Am. and Eng. Enc. of Law, 299, sec. 9; 2 Lawson on Rights, Remedies and Practice, sec. 931; Schoul. on Executors and Administrators, sec. 256; Pinkney v. Singleton, 2 Hill (S. C.), 343; Underwood v. Millegan, 10 Ark., 254; McEldery v. McKeazie, 2 Post (Ala.), 33; Jones v. Jenkins, 2 McCord (S. C.), 494; Sims v. Stillwell, 4 Miss., 176; Miller v. Williamson, 5 Md., 219; Steele v. Steele, 64 Ala., 438; Fitzhugh v. Fitzhugh, 11 Gratt., 300; May v. May, 7 Fla., 207; Snead v. Coleman, 7 Gratt., 300; Mason v. Caldwell, 5 Gilm.; Neahbe v. Price, 2 Natt & McC.; Pierce v. Smith, 2 Brev., 360; Davis v. French, 20 Me., 21.

3. The administrator of Jabez Fitzgerald, not having administered on the estate of Elizabeth Fitzgerald, wife of Jabez, had no power to bind the heirs of said Elizabeth by any of his acts as such administrator, and his contract, if any, could not bind their interest in the land certificate. Caruth v. Grigsby, 57 Texas, 259, 269; Grigsby v. Peak, 68 Texas, 235; Grigsby v. May, 84 Texas, 253; Murrell v. Wright, 78 Texas, 520; Moody v. Butler, 63 Texas, 210; Rudd v. Johnson, 60 Texas, 91; Porter v. Burnet, 60 Texas, 220.

4. Any action for the specific performance of a contract to convey real estate shall be commenced within ten years next after the cause of action shall have accrued. Rev. Stats., art. 3209; Chamberlain v. Boon, 74 Texas, 659; Boon v. Chamberlain, 82 Texas, 480; Shortridge v. Allen, 2 Texas Civ. Apps. R., 193; Sheldon v. Sternberger, 25 S. W. Rep., 333; Abernathy v. Stone, 81 Texas, 430; Dull v. Leon & H. Blum, 68 Texas, 299; Wilson v. Simpson, 68 Texas, 306; Frost et al. v. Wolf et al., 77 Texas, 456; Lewis v. Cole, 60 Texas, 341; Fuller v. Codington, 74 Texas, 334; Flemming v. Reed, 37 Texas, 152; Brown v. Roberts, 75 Texas, 103; Johnson v. Newman, 43 Texas, 629; Carlisle v. Hart, 27 Texas, 352; De Cordova v. Smith, 9 Texas, 129.

5. Where a defendant pleads improvements made in good faith and sustains his plea by the proof, he should have judgment for the value of said improvements, less the value of the use and occupation of the land, and this is not to include the value of use and occupation that has

accrued from the improvements so made by him. Sayles' Statutes, arts. 4813 to 4816; Bitner v. N. Y. and Texas Land Co., 67 Texas, 341; Wortham v. Boyd, 66 Texas, 406.

*Davis & Garnett* and *Taylor, Galloway & McGrady*, for appellees.

1. The Probate Court having recognized the succession and the acts of the administrators as valid, and those entitled to the estate as heirs having participated in the proceedings, acquired rights by virtue thereof, and having treated and recognized such succession as valid, the validity of such acts or of such administration cannot be called in question collaterally, and the heirs are estopped to question such administration. Hartley's Digest, arts. 1069, 1026, 1029; Bartlett v. Cock, 15 Texas, 471; Martin v. Robinson, 67 Texas, 376; Boyle v. Forbes, 9 Texas, 36; Harrison v. Knight, 7 Texas, 54; Baker v. De Zavalla, 1 Posey U. C., 621.

2. Jno. R. Garnett, as the administrator, the representative of the estate of Jabez Fitzgerald, deceased, and as the agent of his heirs, had authority, with or without the intercession of the court where the estate was being administered, to enter into a contract with Thos. C. Bean whereby said Garnett would furnish the land certificate belonging to said estate, and said Bean would have the same located, surveyed, patented, pay the costs of same and receive therefor one-third of the land so acquired, provided such contract was reasonable and for the best interest of the estate.

3. A locative contract for an interest in the land located, can be proven by circumstantial evidence, and the evidence in this case is sufficient to show that Thos. C. Bean made a contract with Jno. R. Garnett, administrator of the estate of Jabez Fitzgerald, deceased, and that such contract was ratified and approved by his heirs or devisees. Wren v. Harris, 78 Texas, 349; Murrell v. Wright, 78 Texas, 519; Ikard v. Thompson, 81 Texas, 285; Bennett v. Land Co., 1 Texas Civ. App., 321; Ellis v. Stone (Civ. App.), 23 S. W. Rep., 405; Boon v. Hulsey, 71 Texas, 191; Emmon v. Oldham, 12 Texas, 18.

4. An administration of the community estate, taken out upon the death of husband, is binding upon the community interest of his surviving wife. Lawson v. Kelly, 82 Texas, 457; Hollingsworth v. Davis, 62 Texas, 438; Moody v. Smoot, 78 Texas, 119; Saye v. McAllister, 18 Texas, 80; Poor v. Boyce, 12 Texas, 309; Howard v. Bennett, 13 Texas, 309; Jones v. Jones, 15 Texas, 143; Clift v. Clift, 72 Texas, 144; Rice v. Rice, 21 Texas, 66.

5. Revised Statutes of Texas, art. 3209, which requires all suits for specific performance of contracts to convey land to be instituted within ten years, applies to contracts by the terms of which one party has the title which he covenants to convey to another person upon the happening of some contingency, but does not apply to a contract by the terms of which the locator acquires an equitable title in the land. Courts do not make contracts for parties, but only construe and enforce those which they find already made. Gibbon v. Bell, 45 Texas, 417;

Peterson v. Ward, 23 S. W. Rep., 637; Threadgill v. Bickerstaff, 26 S. W. Rep., 742; Halbert v. Carroll, 25 S. W. Rep., 1102; Goode v. Lowrey, 70 Tex., 150; Wilson v. Simpson, 80 Texas, 279; Howard v. Stubblefield, 79 Texas, 1; Boone v. Miller, 73 Texas, 557; Robertson v. Dubose, 76 Texas, 10; Cole v. Noble, 63 Texas, 432; Abernathy v. Stone, 81 Texas, 435; Hannman v. Jackson, 26 S. W. Rep., 799; Gibson v. Fielder, 21 S. W. Rep., 173; Rucker v. Daily, 66 Texas, 284; Campbell v. McFadin, 71 Texas, 28; Reed v. West, 47 Texas, 240; Geary v. Cummings, 28 Texas, 91.

6. Appellants' title was wanting in intrinsic fairness and honesty, and therefore cannot be the basis of title by three years statutes of limitation. The question of title being the only question at issue, there can be no question of three years' limitation. R. S., art. 3192; Angel v. Simmons, 26 S. W. Rep. (Texas), 910; Angel on Limitation, sec. 399; Snowden v. Rush, 69 Texas, 593.

7. Elizabeth Baldwin, the wife of Jacob Baldwin, being a descendant of Jabez Fitzgerald, deceased, was charged with notice of the facts connected with her chain of title, which facts constituted Bean's title to the land, and was therefore charged with notice of Bean's title. Bellas v. Lloyd, 2 Watts (Pa.), 401; Lemus v. Bourbon Co., 12 Kans., 186; Martin v. Neblett, 86 Tenn., 383; R. S., art. 2852; Carter v. Comer, 60 Texas, 52; Bates on Partnership, sec. 392; Gaston v. Dashiell, 55 Texas, 508; Jackson v. Elliott, 49 Texas, 62; Bacon v. O'Conner, 25 Texas, 213; Wade on Notice, secs. 25, 43, 64.

TARLTON, CHIEF JUSTICE.—This is an action of trespass to try title, involving 492 acres of land, the east one-third of the Patrick Fitzgerald survey in Cooke County. The appellees were plaintiffs in the court below, against the following named defendants: D. S. Galbraith, J. C. Baldwin, W. C. Duncan, Kansas Investment Co., O. S. Bowman, H. E. Ball, J. F. Wellington, Jr., and A. G. Dickerson. The plaintiffs also sued for the cancellation of two deeds of trust upon the land in controversy, executed by the defendant D. S. Galbraith on April 21, 1890, one to the defendant H. E. Ball, to secure the Kansas Investment Co. in the payment of his promissory note for the sum of $3000, due November 1, 1895, the other to the defendant J. F. Wellington, Jr., to secure the Kansas Investment Co. in the payment of six promissory notes for $60 each, executed by Galbraith for the interest on the $3000 note, and his five promissory notes for the sum of $120 each, executed by Galbraith for the same purpose.

We adopt substantially the conclusions of fact of the learned trial judge, as follows:

1. The land in controversy is a part of a survey of one-third of a league patented to the heirs of Patrick Fitzgerald by patent dated October 2, 1856. Patrick Fitzgerald died in the year 1838, leaving neither wife nor children surviving him, and was never married. His

father, Jabez Fitzgerald, and his mother, Elizabeth Fitzgerald, and a number of brothers and sisters, survived him.

2. The certificate by virtue of which the one-third of a league of land was located, having been sold by the administrator of Patrick Fitzgerald's estate, fell into the hands of Jabez Fitzgerald, the father of Patrick, and was the community property of Jabez Fitzgerald and his wife Elizabeth.

3. Jabez Fitzgerald died in Fannin County, Texas, in the year 1843, leaving his wife Elizabeth and several of their sons and daughters surviving him. He left a will in which his wife Elizabeth was named as his executrix, and at the December term, 1843, of the Probate Court of Fannin County, she qualified as executrix. In March, 1844, she returned an inventory of Jabez Fitzgerald's estate, in which was included the Patrick Fitzgerald one-third of a league certificate.

4. Elizabeth Fitzgerald died about November 1, 1845, leaving still open the administration upon the estate of Jabez Fitzgerald. On November 24, 1845, John R. Garnett was appointed administrator de bonis non of this estate, and he returned an inventory thereof, in which he included the Patrick Fitzgerald one-third of a league certificate. In his final account, filed at the October term, 1854, the administrator Garnett refers to the certificate as follows, viz: "One-third of a league of land supposed to be located in Cooke County by Thos. C. Bean, to whom the certificate was delivered by me for location, the headright of Patrick Fitzgerald, deceased." Upon a re-statement of this account by the court, the land is referred to as follows, viz.: "One-third of a league of land in Cooke County, located by virtue of Patrick Fitzgerald's headright, out of which the locating charges are to be paid to Thos. C. Bean."

5. About the year 1854, John R. Garnett, as administrator of the estate, entered into a contract with said T. C. Bean, plaintiff's intestate, for the location of the Patrick Fitzgerald one-third of a league certificate, by the terms of which Bean was to locate the certificate and to procure patent to the land upon which it should be located at his own expense, and for his services and expenses he should have one-third of the land so located. There is no direct evidence as to the making of this contract between Garnett and Bean, but from the circumstances in evidence it is found as a fact that the contract was made, and that Bean fully and faithfully complied with his part thereof.

6. At the same term of court to which Garnett made his final report as above stated, commissioners were appointed by the court to partition among the heirs of Jabez and Elizabeth Fitzgerald the Patrick Fitzgerald one-third of a league of land, T. C. Bean being one of the commissioners. In pursuance of the appointment, the commissioners partitioned the west two-thirds of the land among the heirs of Jabez and Elizabeth Fitzgerald, dividing it into seven different parcels and designating to which of the heirs they allotted each parcel. Upon the map or diagram of the land and the subdivisions thereof made by the commissioners and

returned to the court, appeared the land in controversy, designated as T. C. Bean's land. This report of the commissioners was approved by the court.

7. In the distribution of the land among the heirs of Jabez and Elizabeth Fitzgerald in accordance with the report of the commissioners, a tract of 70 acres was allotted to Garrett Fitzgerald, who was one of the sons of Jabez and Elizabeth. Garrett Fitzgerald died soon after the distribution of the lands, leaving a wife and some children. The wife of the defendant Jacob Baldwin is one of these children. The wife of Garrett Fitzgerald died in 1874.

8. T. C. Bean paid the taxes on the land in controversy from the time it was patented to his death. His claim thereto was generally known and acquiesced in by the heirs of Jabez and Elizabeth Fitzgerald, and they never set up any claim thereto until after the death of Bean, which occurred in the year 1887. In the locality where the land is situated, it was generally known and regarded as Bean's land.

9. After the death of Bean, the defendants J. C. Baldwin and W. C. Duncan procured to themselves deeds and powers of attorney for the land in controversy from all the heirs of Jabez and Elizabeth Fitzgerald, including the defendant Jacob Baldwin. After procuring these deeds and powers of attorney, they conveyed the land to the defendant D. S. Galbraith. Thereupon the defendant Galbraith executed the deeds of trust referred to above in our statement of this case, to secure the promissory notes therein set out. After the execution of the deeds in trust, and after the Kansas Investment Co. had advanced the money upon the faith thereof, Galbraith reconveyed the land to the defendant J. C. Baldwin, who thereafter conveyed it to his father, the defendant Jacob Baldwin, June 9, 1892. The deed of trust was recorded in Cooke County about April 21, 1890, and the notes secured by the same were payable November 1, 1895.

10. The Kansas Investment Co. advanced the money in good faith, without notice of Bean's claim to the land, and without the knowledge of circumstances sufficient to put an ordinarily prudent man upon inquiry, but the defendants J. C. Baldwin, W. C. Duncan, D. S. Galbraith and Jacob Baldwin are not entitled to protection as innocent purchasers, for the reason that the facts and circumstances connected with their purchases of said land were sufficient to put a reasonably prudent man upon inquiry, and had such inquiry been prosecuted with reasonable diligence, it would have revealed Bean's interest in the land. After the defendants J. C. Baldwin and W. C. Duncan procured deeds to themselves to the land, they fenced it and took actual possession of it, and they and the defendant Jacob Baldwin continued to use and occupy it until the date of the trial below, December 27, 1893. Their use and occupancy, however, was not for a sufficient time before the institution of this suit, viz., January 3, 1893, to establish title under the three years' statute of limitation. The value of the use and occupation of the land was as much as $100 per year.

Upon the foregoing facts the court awarded a recovery of the land in controversy, against all the defendants, in favor of the plaintiffs Howard & Hume, as administrators of the estate of T. C. Bean, deceased. It further rendered judgment in favor of the plaintiffs against W. C. Duncan, Jacob Baldwin, J. C. Baldwin, A. G. Dickerson, and D. S. Galbraith in the sum of $280, for the use and occupation of the land for two years prior to the institution of this suit. It adjudged that the two deeds of trust were accepted and received by the defendants Wellington, Bowman, Ball, and the Kansas Investment Co. in good faith, and without notice of the rights of the plaintiffs in and to the land; that the two deeds of trust and the note for $3000, and such portion of such interest notes as are now unpaid, are a valid charge and lien upon the land. It further, however, adjudged that as between the plaintiffs and the defendants D. S. Galbraith and J. C. Baldwin, it is the duty of Galbraith and Baldwin, and each of them, to pay off and discharge the notes, and it decreed that in case the defendants J. C. Baldwin and D. S. Galbraith should fail to pay at maturity the principal note, or the interest notes, or any part thereof, then the plaintiffs, as administrators of the estate of Bean, shall be permitted to pay the notes, or whatever balance may be due thereon, and redeem the land from the deeds of trust, and in that event that they as administrators shall be subrogated to the notes, and entitled to hold them against Baldwin and Galbraith, and to sue for and collect them.

*Opinion.*— Appellants urge that the court erred in admitting in evidence a duly certified copy of certain proceedings of the County Court of Fannin County in the matter of the estate of Jabez Fitzgerald, deceased. These proceedings include an order of the court dated December 25, 1843, appointing Elizabeth Fitzgerald administratrix of Jabez Fitzgerald, deceased; an order probating the will of Jabez Fitzgerald, deceased; an order dated November 24, 1845, appointing John R. Garnett administrator de bonis non, and copies of inventories returned in the course of these administrations; the final report of John R. Garnett, administrator de bonis non of Jabez Fitzgerald's estate, filed at the October term, 1854, of the County Court of Fannin County, Texas, and a statement of that account by the court; an order of the court appointing commissioners to partition among the heirs of Jabez Fitzgerald one-third of a league of land in Cooke County; the report of the commissioners, with a plat accompanying it, and the writing on the plat, with an order of the court approving the report. The character of these proceedings and orders is sufficiently, we think, set out in our conclusions of fact.

The question to be determined was whether the land in controversy had been set aside to T. C. Bean by valid partition proceedings. The evidence complained of was accompanied or preceded by testimony showing that in August, 1854, Bean filed for location the Patrick Fitzgerald headright certificate upon the land subsequently patented by virtue thereof; that Jabez Fitzgerald administered upon the estate of

Patrick Fitzgerald, deceased, and sold his headright certificate under order of the court, which was all the property of his estate, which sale was confirmed by the court. The proceedings complained of showed that Jabez Fitzgerald died in 1843; that he left a will, which was duly probated, of which his surviving wife Elizabeth qualified as executrix; that she filed a sworn inventory and appraisement of his estate, including among other items the Patrick Fitzgerald land certificate; that by the terms of the will he assumed to dispose of all the community property of himself and wife Elizabeth; that after her death John R. Garnett, whose wife was one of the heirs of Jabez Fitzgerald, qualified in 1845 as administrator de bonis non of the estate of Jabez Fitzgerald; that as such administrator he inventoried the land certificate as a part of his estate; that in March, 1854, Mrs. Pace, who was one of the heirs of Jabez Fitzgerald, joined by her husband, filed her petition to partition the estate, making all of the other heirs or devisees parties thereto; that the administrator thereafter, in October, 1854, in his report of the condition of the estate, set up the fact that the Patrick Fitzgerald land certificate was supposed to be located in Cooke County by Thos. C. Bean, to whom he had delivered the same for location; that the court heard this report of the administrator and restated it, proceeding to render judgment decreeing the property subject to partition, and naming those entitled thereto, and to what part each was entitled, reciting the fact that the locating charges are to be paid to T. C. Bean out of the Patrick Fitzgerald survey of land. The report of the commissioners recommending the partition to be made is approved by the court, with a recital that no objection was made thereto by any of the parties. It was duly entered of record upon the minutes of the court. The survey indicating the partition is plotted, with the names of the parties to whom the land is allotted in connection with the field notes for each allotment. The east one-third of the land is mapped off as having been set aside to T. C. Bean, and in one instance at least, the tract of James T. Fitzgerald, one of the heirs, is identified by a call for the southwest corner of a tract of 492 acres set aside to Thos. C. Bean.

We think this testimony had a tendency at least to show a contract with the administrator of Jabez Fitzgerald, by the terms of which T. C. Bean was to have an interest in the land for his services in locating the certificate. We think also that the administrator was empowered, with the court's approval, to enter into a contract with Bean for an interest in this land, in consideration of locative services. The evidence complained of shows such an approval. Williams v. Howard, 31 S. W. Rep., 838.

Nor would the fact that the certificate was the community property of Jabez Fitzgerald and Elizabeth Fitzgerald invalidate it as to the community interest of the wife. A statement of our views on this question will be also found in Williams v. Howard, supra.

The orders in question are assailed on the ground that under the

laws in force at the time that these proceedings were had, an adminis-
tration on a deceased person's estate could not be continued for more
than one year from the date of issuance of letters of administration,
unless ordered by the court to be continued for a longer period, and in
no event could the same be continued for a longer period than five
years.   This objection is overruled by us.   See Williams v. Howard,
supra.

In Soye v. McCallister, 18 Texas, 100, Mr. Justice Wheeler uses
the following language: "The principal objection to the sale in the
present case is, that it does not appear that the term of administration
was continued down to the period of the sale.   The administrator,
however, continued to act under the sanction of the Probate Court; and
there is more than the usual apparent regularity in the proceedings,
in other respects.   That the absence in the record of any evidence of
the extension by the court of the term of administration does not
invalidate the title of the purchaser, has been fully settled in the cases
referred to."

Among the cases referred to is that of Burditt v. Silisbee, 15 Texas,
604, in which it is held that "the five years' limitation or restriction
referred to in the law of Louisiana (invoked as at the time in force
in this State) never had effect upon any estates administered in this
country."

The evidence justified the court's conclusion of fact that John R.
Garnett, the administrator of the estate of Jabez Fitzgerald, entered
into a contract with T. C. Bean for the location of the certificate in
question, and that by the terms of this contract Bean, in consideration
of his locative services, and of his procuring the patent to the land
at his own expense, was to acquire title to one-third of the land located
by him.   It is held in Boone v. Hulsey, 71 Texas, 191, that circum-
stantial evidence sufficient to reasonably produce belief of the existence
of such a contract will suffice to prove it.   We think that the circum-
stances shown by the plaintiffs were sufficient to meet this test.   The
facts that the certificate became admittedly the community property
of Jabez Fitzgerald and his wife; that it was delivered by the adminis-
trator of the Jabez Fitzgerald estate to Thos. C. Bean for location;
that it was located by the latter; that he obtained a patent therefor;
that the interest of Bean in the land secured by its location was in effect
reported to the court as a one-third interest; that partition was had
with Bean upon that basis; that to the latter the land was set apart
by metes and bounds in the decree of partition; that the heirs of Jabez
Fitzgerald were parties to the application for partition, and to the
decree had by virtue thereof; that they disposed of the two-thirds of
the land set apart to them according to their several portions, referring
to the decree of partition; that for many years, in fact until shortly
before the institution of this suit, they acquiesced in the partition,
recognizing the one-third interest designated on the plot as the T. C.
Bean interest; that Bean during his lifetime paid all taxes upon the

land; that his title to it was a matter of notoriety among the heirs and in the neighborhood where the land was situated,—were ample warrant for the court's conclusion, in the absence of all living witnesses to the transaction, that the locative contract referred to had been made by the administrator with T. C. Bean.

Article 3209 of the Revised Statutes is invoked by the appellants to sustain their assignment that the plaintiffs' action should be deemed barred by the lapse of ten years, and that their demand was stale, and should accordingly have been rejected by the court. We are of opinion that the article referred to, which provides that any action for the specific performance of a contract to convey real estate shall be commenced within ten years next after the cause of action shall have accrued, is inapplicable to this suit, as also is the defense of stale demand. By the terms of the locative contract found to exist in this case, the locator acquired a superior title to the land, which he seeks here to assert. The article in question has reference to suits for the specific performance of contracts to convey land. This is not such a suit. It is an action whereby the plaintiffs seek a recognition of the superior title already acquired by the performance of the contract and a partition had in accordance therewith. We are not here concerned with a contract for the purchase and sale of land by the administrator to Bean, but with an agreement by which, on the issuance of patent, the estate of Jabez Fitzgerald acquired a two-thirds interest in the land and the locator Bean a one-third interest — the interest subject to be set aside by partition between the owners. Gibbons v. Bell, 45 Texas, 417. On the issuance of a patent in the name of the heirs of Patrick Fitzgerald, they held the legal title to the extent of a one-third interest in trust for the locator Bean. The latter or his representatives were not required to institute suit to compel a recognition of a locative title until this was disputed. As through a long series of years the superior title of Bean to the 492 acres set aside to him was unequivocally recognized by the holders of the legal title, it became unnecessary during that period to institute a proceeding to compel such a recognition. It was certainly not required that they should institute a proceeding to compel the recognition of that which was not disputed. This is a case in which Bean occupied a position not inferior to that of a beneficiary in a resulting as contradistinguished from a constructive trust. In the latter, the trustee holds in adverse right from the beginning, and limitation begins from the time that the beneficiary should have discovered his right of action. In the former, the trustee holds for the benefit of the beneficiary, and in privity with him, until notice of repudiation is brought to the knowledge of the beneficiary. Gibbons v. Bell, supra; Cole v. Noble, 63 Texas, 432; Goode v. Lowry, 70 Texas, 150; Wilson v. Simpson, 80 Texas, 279; Abernathy v. Stone, 81 Texas, 435; Sprague v. Haines, 68 Texas, 215; Brotherton v. Weathersby, 73 Texas, 473; Robertson v. Dubose, 76 Texas, 10.

The evidence also justified the conclusion of the court that the

occupancy of the defendants was not for a sufficient time before the institution of the suit to establish title under the three years' statute of limitation. There was testimony tending to show that their occupancy began in January, 1890, less than three years before the institution of the suit. Indeed, the conveyances under which Baldwin and Duncan held were mostly executed in the month of January, 1890, less than three years before the date of the suit; and it will be observed that to sustain the defense of three years' limitation, possession must be under color of title. It is true that there was evidence pointing to a conclusion contrary to that above expressed, but where the testimony is conflicting, it becomes us to approve the finding of the trial judge, sustained as it is by the course of the evidence. In a question of this kind, where the burden rests upon the defendant to make out his plea, it would seem that uncertainty in the testimony operates against him. In any event, we do not feel free to disturb the finding of the judge who tried the case.

. Though Jacob Baldwin was not personally made a defendant until the filing of plaintiffs' amended petition, April 27, 1893, his tenant, A. G. Dickerson, was sued in the original petition. This sufficed to interrupt the running of the statute in favor of Jacob Baldwin. Allen v. Reid, 66 Texas, 13; Stout v. Taul, 71 Texas, 438.

We think that the evidence also justified the court in its conclusion that the defendant Jacob Baldwin was not entitled to protection as an innocent purchaser. In view of the facts and circumstances connected with the defendant's purchase, of his relationship to the family of Jabez Fitzgerald, of the conveyance by him on February 11, 1882, joining his wife, of that portion of the land which had been set apart to her father, Garrett Fitzgerald, by the probate decree in question, to which reference was made in the deed executed by him and his wife, of the fact also that on December 12, 1889, he and his wife conveyed without consideration their interest in the land in question, again describing it with reference to the partition made in the estate of Jabez Fitzgerald — all these facts, and other circumstances disclosed by the record, render it improper in us to hold that the court's conclusion affecting the defendant Jacob Baldwin with notice is without support in the evidence.

We are not prepared to condemn the action of the court in failing to find that Jacob Baldwin was entitled to recover for the value of improvements made in good faith. The record indicates that the court probably found (without, however, expressing that conclusion), or from the evidence might have found, that Jacob Baldwin had actual notice of Bean's claim. We are the more averse to disturb this action of the court for the reason that the defendant failed to set up in his plea the ground upon which the suggestion of improvements in good faith is based. Revised Statutes, art. 4813; Thompson v. Comstock, 59 Texas, 318.

The finding of the court that Garrett Fitzgerald died after the partition of the west two-thirds of the Patrick Fitzgerald survey finds support in

the recitals of the proceedings of the Probate Court of Fannin County; first, in the decree of that court dated November 1, 1854, reciting the fact that Garrett Fitzgerald, having been cited, appeared by his attorney, James B. Davis, joining in the prayer for partition, and next, in the decree dated September 24, 1855, approving the report of the commissioners setting aside to the several heirs the tracts by metes and bounds allotted to them out of the Fitzgerald survey, with an allotment to T. C. Bean of 492 acres, the east one-third of the survey, the land in controversy. If, however, this finding was erroneous, we do not think it material, because his heirs, including the wife of the defendant Jacob Baldwin, and himself, took the portion thus set apart to Garrett Fitzgerald, and thus ratified the partition. Lemonds v. Stratton, 24 S. W. Rep., 371, and authorities there cited.

Certain interrogatories were propounded to the defendants D. S. Galbraith, J. C. Baldwin and W. C. Duncan. The defendants were not served with notice of the filing of these interrogatories, nor was an opportunity given them to cross them. At the time that the interrogatories were taken, the suit was in the nature of an action of trespass to try title, with a prayer for the recovery of $5000 as damages against the several defendants. Subsequently to the filing of the interrogatories, Jacob Baldwin was made a party to the suit. In the amendment by which he was brought in, it was alleged that J. C. Baldwin, D. S. Galbraith and W. C. Duncan entered into a conspiracy to defraud the estate of Bean out of its title to the land (which they, as charged, well knew), by means of securing the legal title to be placed in the hands of an innocent purchaser, on account of the failure of Bean to have his title recorded in Cooke County, where the land was situated. Over the objections of the defendants that they were not admissible for any purpose, the court permitted the reading of the depositions of Galbraith and Baldwin, the defendant Duncan having refused to answer. The interrogatories were filed under art. 2240 of the Revised Statutes, which, under the conditions provided for, dispenses with the necessity of serving a copy upon the adverse party whose answers are required. The action of the court was justified at least as to the defendants named. Nor were the interrogatories or answers thereto rendered irrelevant by the fact that these defendants disclaimed any title to the land. The interrogatories referred to issues made by the averments charging conspiracy in the manner above indicated. Teas v. McDonald, 13 Texas, 349; Parker v. Chancellor, 78 Texas, 524.

We approve the action of the court in admitting in evidence the deeds from the heirs of Jabez Fitzgerald conveying to various parties their respective shares of the west two-thirds of the Patrick Fitzgerald survey, as set aside to them in the partition of his estate. These instruments were on record in Cooke County. They showed a knowledge by the heirs of the partition decree so essentially involved in this issue. They were executed at different dates long prior to the execution of the instruments under which the defendants claim title to the land. They

tended to show a recognition by the heirs of the title of the plaintiff, and to rebut the contention that the defendants purchased without notice. They were not links in the chain of the plaintiffs' title, and it was not necessary that they should be included in their abstract of title, if any was filed by them.

Testimony was properly heard to the effect that before the land was claimed or occupied by the defendants, it was known in the neighborhood of its location as Bean's land, and that the Fitzgerald heirs always recognized his title to it and set up no claim to it. The evidence as to the notoriety of the plaintiffs' claim was pertinent on the issue of notice, and the statements made by the heirs — grantors of the defendants — before they parted with their title were admissible in rebuttal of the issue of stale demand. Wilson v. Williams, 25 Texas, 55; Berry v. House, 21 S. W. Rep., 711; Titus v. Johnson, 50 Texas, 224.

The court, we think, erred in rendering a judgment against D. S. Galbraith, W. C. Duncan, A. G. Dickerson, Jacob Baldwin and J. C. Baldwin jointly for $280. Each of these defendants should have been held responsible for the rental value of the land during the time he occupied it, but not longer. The testimony justifies the conclusion that the rental value amounted to at least $100 per year. The fact that either of the defendants filed a disclaimer would not absolve him from liability for the time that he reaped the benefits of occupancy during a period two years next preceding the institution of the suit. Revised Statutes, art. 4809. The amended petition alleges such occupancy and prays for a recovery of rents for this period, which, as the record shows, began January 3, 1891. During this time J. C. Baldwin had possession for seventeen months, and is therefore liable for rents in the sum of $141.66. He conveyed to his father, Jacob Baldwin, on June 9, 1892. From December, 1892, to December, 1893, the date of the trial, Jacob Baldwin had possession through his tenant, A. G. Dickerson. It does not appear that during the period named D. S. Galbraith or W. C. Duncan was in possession of the premises. We therefore conclude that the plaintiff should have recovered against the defendant J. C. Baldwin alone the sum of $141.66 as rents; that he should have recovered against the defendant Jacob Baldwin alone the sum of $50; and against Jacob Baldwin and A. G. Dickerson jointly the sum of $100; but nothing against Galbraith and Duncan. The judgment as to rents will be thus reformed.

The concluding assignments of error complain of the action of the court in failing to find that the plaintiffs' cause of action seeking a personal judgment against the defendants D. S. Galbraith, W. C. Duncan and J. C. Baldwin was barred by the two and three years' statutes of limitation. While the conclusions of law filed by the learned trial judge indicate that he awarded a personal judgment against the defendants named in this assignment for so much of the debt held by the Kansas Investment Co. as the plaintiffs might afterward be compelled to pay, the judgment in fact rendered fails to decree such a recovery. The judgment as actually entered provides, as we have already seen, that in

case the defendants J. C. Baldwin and D. S. Galbraith shall fail to pay at maturity the principal note or the interest notes, 'or any part of the sum secured by the deeds in trust held by the Kansas Investment Co., then the plaintiffs, as administrators of the estate of Bean, shall be permitted to pay the notes or whatever balance may be due thereon, and to redeem the land from the deeds of trust, and in that event the plaintiffs as such administrators shall be subrogated to the notes, and entitled to hold them against Baldwin and Galbraith, and to sue for and collect them. In other words, the judgment provides for the right of subrogation as existing in the plaintiffs if they should be compelled to remove the incumbrance which had been improperly placed upon the land. This right of subrogation was correctly recognized by the court. It exists where, as in this case, "the person claiming its benefit has been compelled to pay the debt of a third person, in order to protect his own rights, or to save his own property." Sheldon on Subrogation, 4; Cole v. Malcolm, 66 N. Y., 363.

As the necessity for the exercise of the right would not arise until failure by the third person to pay his debt, it follows, we think, that the statute of limitation would not begin to run against the person entitled to the subrogation until the failure by the person owing it to discharge the liability. It also follows that the statute of four, and not that of two or three, years' limitation would be applicable. In the feature here considered, this is a suit to cancel a fraudulent incumbrance, or in the alternative, to be subrogated to the beneficiary in the deed in trust. Such an action would seem to come within the purview of art. 3207 of our Revised Statutes, providing that, "Every action other than for the recovery of real estate for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued." Garvin v. Hall, 83 Texas, 295; Railway v. Titterington, 84 Texas, 218.

We conclude that the judgment must be reformed in the manner already indicated as to the recovery for rents, and that in every other respect it be affirmed. The costs of appeal will be taxed against the appellees.

*Reformed and affirmed.*

Delivered October 5, 1895.

Writ of error refused.