## KERENS NAT. BANK et al. v. STOCKTON et al.

### No. 1352.

Court of Civil Appeals of Texas. Waco.

June 1, 1933.

Rehearing Denied June 22, 1933.

Richard & A. P. Mays, of Corsicana, for appellants.

J. S. Callicutt and B. W. George, both of Corsicana, and W. R. Howell, of Fort Worth, for appellees.

STANFORD, Justice.

This suit was instituted January 9, 1922, by the Kerens National Bank, one of appellants herein, against W. T. Stockton, individually and as independent executor of the estate of L. M. Morris, deceased, and against the six children of the deceased as beneficiaries under his will, to recover judgment on promissory notes and for appropriate provision for the satisfaction of such judgment out of the nonexempt property belonging to said estate. Various other unsecured creditors of said estate intervened. A trial of the case resulted in a judgment from which an appeal was prosecuted to the Court of Civil Appeals, where the judgment of the trial court was affirmed in part and in part reversed and remanded. See Kerens National Bank et al. v. W. T. Stockton et al. (Tex. Civ. App.) 281 S. W. 580. The Supreme Court granted a writ of error and reversed and remanded the cause as to all parties. See Kerens National Bank et al. v. Stockton et al., 120 Tex. 546, 40 S.W.(2d) 7, 77 A. L. R. 362. Many of the issues originally involved were settled by the decision of the Supreme Court and need not be here considered. The principal issue upon the second trial of the case was one of subrogation. A brief statement of the facts out of which such issue arose is necessary to a full understanding of the same. The estate of the deceased was insolvent. The real estate belonging thereto consisted of 295 acres, which the deceased bequeathed to his six children share and share alike, but the control of which he vested by the terms of the will in his aforesaid executor. 157½ acres of said tract were set aside as the homestead, but such homestead was never segregated by a partition, and at the time of the trial it existed as an undivided interest in the tract as a whole. The un-

divided remainder of said tract, consisting of 137½ acres, was subject to payment of the debts of the deceased. The entire tract was encumbered with valid subsisting liens amounting in the aggregate to approximately $14,000. The deceased left life insurance, payable to his children, in the sum of approximately $13,000. He appointed said Stockton independent executor of his estate and authorized him to control and manage the same until his youngest child became twenty-five years of age. He also appointed said Stockton testamentary guardian of his minor children and authorized him to control the insurance money and apply it for their benefit. Stockton collected the insurance money and also the rents and revenues from the entire tract of land to the time of trial. Out of the funds in his hands as independent executor and guardian he paid the entire lien indebtedness on the land, with accrued interest, secured releases thereof, and had the same duly recorded. He claimed that said indebtedness was paid out of moneys belonging to his wards and that he as independent executor (and trustee) was subrogated to the liens held by the creditors whose debts were discharged and entitled to be reimbursed for the full amount thereof out of the nonexempt property belonging to the estate, before unsecured creditors were entitled to payment.

The case was submitted on special issues, in response to which the jury found, in substance: (1) W. T. Stockton, as executor, paid the sum of $20,996 principal and interest on the lien indebtedness against the 295 acres of land belonging to the estate of L. M. Morris out of rents and revenues derived from said land and insurance funds belonging to the children of said Morris. (2) $6,000 of such sum was paid out of said insurance money. (3) $14,000 of such sum was paid out of rents and revenues derived from said land. (4) The reasonable market value per acre of said tract of land was $55. (5) The reasonable market value at the time of trial of the undivided interest of Morris' estate in said tract was $55 per acre.

The jury further found, in response to a special issue submitted at the request of appellants, as follows: "The value of the non exempt property of the estate of the deceased, L. M. Morris, sold by the executor was $525.-00."

The court received the verdict and rendered judgment thereon. The court recited in said judgment that appellant Kerens National Bank had established an indebtedness against the estate of L. M. Morris, deceased, and W. T. Stockton, independent executor thereof, jointly and severally, in the sum of $4,605.95, and further recited that said 295-acre tract of land was at the death of L. M. Morris encumbered with liens to secure indebtedness amounting in the aggregate to $14,053, all of which bore interest at the rate

of 8 per cent. per annum, and that Stockton, as executor, on or about January, 1930, paid said indebtedness and all accrued interest thereon in full and obtained a release of said property from such liens, and thereby became, in his representative capacity as aforesaid, subrogated to all the rights of the original holders of such indebtedness, and by reason of such subrogation had a superior right to said property as against appellants and other interveners. The court further recited that the evidence established that the aggregate of first class claims against said estate, including funeral expenses, expenses of administration and allowances, together with the aggregate amount of lien indebtedness as aforesaid, was in excess of the value of the 137½ acres of land not exempt as homestead, and that the value of the nonexempt property, real and personal, was insufficient to pay off and satisfy the lien indebtedness as aforesaid and the first class claims against the estate. The court thereupon rendered judgment in favor of appellants against the estate of L. M. Morris, deceased, and W. T. Stockton, independent executor thereof, jointly and severally, for said sum of $4,605.95, with interest and costs, and expressly ordered that appellants and other interveners herein be denied the right to collect their indebtedness, or any part thereof, out of the value of the 137½ acres of land in excess of the homestead of the children of the deceased or any other nonexempt property of said estate.

### Opinion.

Appellants present various assignments of error in which they assail the judgment of the court holding that Stockton, in his representative capacity as executor, etc., was subrogated to the liens securing the indebtedness discharged by him as found by the jury, and had a right to be reimbursed therefor out of the nonexempt property of the estate. The specific contention made thereunder is that his pleadings were insufficient to raise such issue; that the testimony was insufficient to justify the submission of the same; and that Stockton having voluntarily paid such indebtedness and secured and recorded releases from the holders thereof, the liens were extinguished and no right of subrogation thereto arose.

■ Appellee Stockton pleaded the facts hereinbefore stated, and further pleaded that he paid the lien indebtedness aforesaid out of money held by him as trustee for the Morris children, and principally out of the rents and revenues of the homestead. He further alleged that he also used such rents and revenues to pay the interest on said indebtedness and taxes on the property. He further pleaded the payment of certain first class claims, allowances, and expenses of administration, and alleged that such payments in the aggregate largely exceeded the value of

the nonexempt property belonging to the estate. He prayed that he in his capacity as executor (and trustee) be, for the benefit of the Morris children, subrogated to the rights of the holders of the lien indebtedness so discharged by him, and that the title to the land belonging to the estate in excess of the homestead be vested in them in satisfaction of such right of subrogation. The Morris children adopted his answer. The pleadings were sufficient to raise an issue of the right to such subrogation.

■ Stockton testified that the Morris estate was insolvent; that he collected the rents from the tract as a whole from 1921 to 1931, inclusive; that he estimated the average annual rental at $2,000 a year, or an aggregate of $22,000; and that he sold certain nonexempt personal property. The jury found the value of such personal property to be $525. Stockton also testified that he collected life insurance payable to the Morris children in the approximate sum of $13,000. He further testified that he deposited said several sums in bank to his credit as executor. He testified that he paid out of said account taxes on the entire tract of land in the sum of $2,246.30. Deducting that amount from the entire rentals received leaves the sum of $19,753.70. The nonexempt real estate consisted of 137½ acres. The proportionate part of rentals derived therefrom was $9,207. The remainder of the rentals, amounting to $12,793, accrued from the use of the homestead portion of said lands and were therefore the individual property of the Morris children. Stockton further testified that he paid out of said account the following sums: To Mrs. Morris, the surviving widow, as allowances, $600; medical bills $20; funeral expenses $211.75; federal income tax $43.90; court costs $307.68; and attorney's fees $1,540. The aggregate of these several amounts is $2,423.33. All of the same were properly paid out of nonexempt property, or the income thereof, in preference to the claims of appellants. Stockton further testified that he paid out of said account the entire lien indebtedness. The jury found that the total amount paid on lien indebtedness, including interest, was $20,996, and that $6,000 thereof was paid out of insurance money belonging to the Morris children and $14,996 out of the rents received from the entire tract as aforesaid. The net amount of rents collected from nonexempt acreage, as heretofore shown, was

$9,207, and adding thereto the sum of $525, proceeds of nonexempt personal property, aggregates $9,732 available for the payment of debts of the estate. Deducting therefrom the $2,423 paid by the executor on other than lien debts as aforesaid, leaves a balance of $7,209 available for the discharge of such lien indebtedness, or $7,787 less than the amount actually paid thereon by the executor. Said amount having been paid out of rents derived from the homestead acreage and belonging to the Morris children, they were entitled to be reimbursed therefor out of the nonexempt property. The only remaining nonexempt property was the said 137½ acres of land, which the jury found was worth $55 per acre, or an aggregate of $7,562.-50. The same lacked $214.50 of being sufficient to reimburse them. There was therefore no property belonging to the Morris estate out of which the claims of appellants and other unsecured creditors could be satisfied. The court so recited in his judgment and appellants assail such recital, but the evidence as a whole is sufficient to sustain the same. The right of subrogation claimed by Stockton was an equitable one and arose out of the fact that the lien indebtedness was discharged for the protection of the homestead property of the Morris children. No assignment of the lien was necessary to perfect his right, and such right was not defeated by the fact that he secured and recorded formal releases from the lienholders. The judgment of the court vesting title to the excess acreage over and above the homestead in the Morris children was proper, since the value of the same was less than the amount they were entitled to receive out of the proceeds of the same if sold. The law will not require a futile thing, such as the sale of such excess acreage for the purpose of satisfying a debt greater than the value thereof. The judgment of the court was correct, and is supported by the following authorities: Young v. Pecos County, 46 Tex. Civ. App. 319, 101 S. W. 1055; Silliman v. Gammage, 55 Tex. 365; Elliott v. C. C. Slaughter Co. (Tex. Civ. App.) 236 S. W. 1114; Vasser v. City of Liberty, 50 Tex. Civ. App. 111, 110 S. W. 119, 121, par. 4; Harris v. Hamilton (Tex. Com. App.) 221 S. W. 273, par. 6; Galbraith-Foxworth Lbr. Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162, pars. 9 and 10; Galbraith v. Howard, 11 Tex. Civ. App. 230, 32 S. W. 803, 809, point 16; 25 R. C. L. p. 1324, par. 11.

The judgment of the trial court is affirmed.