JESSE ESTELL V. J. D. B. COLE.                    62  695
                                                   s89  326
(Case No. 1634.)

1. IMPROVEMENTS IN GOOD FAITH.— Where one brings suit for, and sequesters land, he cannot, if he afterwards fail in the suit, recover for valuable improvements which he may have made upon the land pending the litigation.

2. OUTSTANDING TITLE — SPECIFIC PERFORMANCE — VENDOR AND VENDEE.— The defendant had purchased the land from A., receiving a bond for title with general warranty. He had given three notes for the purchase money, which had not been paid. B. (a second vendee of A.) brought suit for the land, alleging that the defendant had forfeited all right to the land by his failure to pay the purchase money. The latter pleaded an outstanding title to the land, as an excuse for his failure to pay. Held:

(1) That he was not required to allege a superior outstanding title; that to excuse his failure to pay, it was enough that there was a real claim to the land asserted by third parties.

(2) That as long as the title which he had received from his vendor was incumbered or doubtful, a court of equity would not decree a specific performance against him.

3. SAME — NOTICE — SET-OFF — VENDOR AND VENDEE.— When the defendant set up the outstanding title, he prayed that the holders of that title, and A., his vendor, should be made parties, and be required to litigate the title before he should be required to pay the purchase money. The holders of that title answered, and, being non-residents, sought to remove the cause to the federal court. A. also answered, admitting that the outstanding title was a cloud upon the title which he had conveyed to the defendant. But they were dismissed from the case upon motion of the plaintiff, and the holders of the outstanding title proceeded against the defendant in the federal court. Held:

(1) That the pleading of the defendant was a sufficient notification to A. of the claim to the land and a sufficient demand upon him to defend the title.

(2) That as it was the duty of A. to defend the title which he had conveyed to the defendant, the latter might, in this suit, set off against the purchase money notes whatever outlay he had necessarily made in extinguishing the opposing title — not to include attorneys' fees.

(3) That the plaintiff, having purchased from A. with full knowledge of the rights of the defendant, whatever would be a good defense against A., if he were plaintiff, would be good against him.

(4) In this case A., having indulged the non-payment of the purchase money for more than a year after the maturity of the last note, was not entitled to treat the contract as forfeited, without notice to the defendant, and resell to the plaintiff.

4. IMPROVEMENTS IN GOOD FAITH.— As it appeared that the purchase money notes had been deposited in court, it is held that, upon payment of the purchase money,— less some credits to which the record shows him to be entitled, including rents for the land,— a decree should be made vesting in defendant the title to the land; and that the plaintiff was not entitled to pay for improvements placed on the land by him while in possession.

ERROR from McLennan. Tried below before the Hon. B. W. Rimes.

The case will be found stated as it was presented by the former appeal in 52 Tex., 170. The following from plaintiff in error's statement of the case presents its progress afterwards:

Upon return of the mandate to the court below plaintiff amended, alleging his purchase August 14, 1871, the executory purchase of Estell January 15, 1867, and forfeiture of same by non-payment at maturity, etc. He further alleged improvements made since he got possession under a writ of sequestration in this case April 30, 1874, and changed his prayer accordingly. Chism amended, leaving out his former plea tendering issue of title to the Rios, and joined plaintiff in his pleadings.

The Rios made default. The defendant Estell amended, reiterating the material points of his former answer and conforming the same to the ruling of this court; also further alleging that since the former trial, the suits brought by the Rios in the United States court against this defendant and others had been decided in favor of said Rios, and that he had been forced to buy the land from said Rios in order to protect his rights under the purchase of Chism, but that this purchase was made in subserviency to the title he held under Chism, and prayed he be allowed reasonable compensation therefor, and that he have title under his said contract with Chism, etc.

The trial resulted in a judgment for plaintiff for the land, etc., and the defendant Estell again brings the case to this court.

The substance of plaintiff's amended petition, filed after the cause was remanded, is thus stated in the brief of appellee's counsel:

In his amended petition Cole alleges the accrual of his title on August 14, 1871, by deed from Chism; that Chism had sold to Estell by bond for title, January 15, 1867, for three notes, due in one and two and three years, two of which were for $666⅔, and one for a less sum, although the bond recited three notes for equal amounts; that the effect of said bond was an obligation to make title on the

prompt and full payment of said notes; that Estell failed and refused, without adequate excuse, to pay any part of said notes, though often demanded; that he never intended to pay them, but, being insolvent, designed to hold possession of the land and defraud Chism of the use and profits until he could be ejected, or invent some pretext to retain said land without payment. That the money was often demanded after the maturity of all of the notes; that he neither offered nor attempted to pay them, and after default was notified by Chism and his agents of his intention to rescind the contract, and that Estell set up no claim to compensation for any improvements or payments, nor did he base his refusal to pay upon any fear or apprehension as to the validity of Chism's title, but simply failed and refused to pay, without excuse; and that these facts were known to plaintiff, and relied on by him when he purchased from Chism as authorizing Chism to abandon the contract.

That the notes were tendered to Estell on the rescission and have been delivered into court for him; that no person has since asserted any liability of Estell upon them. At all times before the sale to plaintiff, Chism was able, ready and willing to make title to Estell upon the payment of the notes. That after full notice of intention to abandon said contract Chism conveyed to Cole; that Cole has paid for the land; that Estell was in possession at the institution of this suit and refused to deliver possession to plaintiff, but held possession three years, converting the rents and profits, and is still setting up claim to same; that the pretended excuses now set up for non-payment are false; that he well knew that Chism had the title, and does not now assert that any of the pretended adverse titles are or were superior to Chism's, or that Chism's title was doubtful; that it is not true, as alleged by Estell, that Chism is insolvent; that the right to abandon the contract having accrued and been exercised, no supervening equities, real or so-called, arising out of doubts or apprehensions of Estell as to title, and no subsequent failure upon the part of Chism to perform any duty to Estell, growing out of these supervening events, can impair Cole's title. Before the accrual of plaintiff's title, Estell, fraudulently designing to deprive Chism of his security, cut down, wasted, destroyed, sold and converted to his own use, timber of more value than any pretended payments or improvements made by him.

*M. Suratt* and *James C. Walker*, for plaintiff in error, cited: Estell *v.* Cole, 52 Tex., 177; Story Eq., secs. 395–6, 784–8; Christianson *v.* Gardner, 5 Johns. Ch., 29; Austin *v.* Ewell, 25 Tex. Sup., 407; Henderson *v.* Ownby, 56 Tex., 647.

*Alexander & Winter,* for defendant in error, on the proposition that mere knowledge of a suit against a vendee does not conclude the warrantor, cited: Paul *v.* Wittman, 3 Watts & Serg., 410; Boyd *v.* Whitfield, 19 Ark., 470; Simms *v.* Schmidt, 24 Wis., 421; Rawle on Covenants, pp. 221, 229, and authorities cited.

They also cited on other propositions involved: McCarty *v.* Moorer, 50 Tex., 291; Terrill *v.* Dewitt, 20 Tex., 260; Roeder *v.* Robson, 20 Tex., 754; Thompson *v.* Westbrook, 56 Tex., 266; Cook *v.* Jackson, 20 Tex., 210; Burgess *v.* Millican, 50 Tex., 403; 3 Tex., 353; 25 Tex. Sup., 303.

DELANY, J. COM. APP.—The first assignment of error is as follows: "The court erred in overruling defendant Estell's exceptions contained in his first amended original answer . . . to plaintiff's first amended original petition, filed December 9, 1881."

It appears that pending the suit the plaintiff sequestered the property, and has held possession ever since.

When the case went back to the district court upon the reversal of the former judgment, the plaintiff alleged that he had made valuable improvements upon the land in good faith, and asked that he be allowed their value in the event of a recovery by the defendant Estell.

To this pleading Estell excepted, and this exception was overruled.

In this we think there was error. Our statute, which allows a party to make claim for improvements, requires him to allege that he has been in possession for "at least one year next before the commencement of such suit." R. S., art. 4813. See, also, Henderson *v.* Ownby, 56 Tex., 647.

The second assignment is as follows: The court erred in sustaining special exceptions 1, 2, 3, 5 and 6 of plaintiff to defendant's first amended original answer, and in sustaining special exceptions 1 and 3 to defendant's trial amendment.

The first exception is as follows:

"Plaintiff excepts to so much of said answer as sets up that it was agreed that Estell should have absolutely one hundred and seven acres of said land, because it appears from said plea that said bond or conveyance was in writing and made a part thereof, and that defendant seeks to vary and change said written instrument by contemporaneous parol statements, and does not show any fraud, accident or mistake, and because it sought to show a sale of land by parol evidence."

The plea, however, does state that the instruments were so executed " through inadvertence and mistake."

The bond is as follows:

" State of Texas, County of McLennan:   Know all men by these presents, that I do this day give Jesse Estell, a freedman of McLennan county, state of Texas, a title bond to one thousand one hundred and seven acres of land, being the southeast portion of the Sam Gholson headright, for and in consideration of his notes, one for $666.66⅔, payable twelve months from date, the second note payable in two years for $666.66⅔, the third note payable in three years for $666.66⅔, all of said notes bearing ten per cent. interest per annum from date.   I, John Chism, of Limestone county, state of Texas, do hereby bind myself, my heirs and assigns, to warrant and forever defend unto the said Jesse Estell, his heirs, executors, adminstrators or assigns, the title of said land against all claims or claimants whatsoever.   Given under my hand, this, the 15th day of January, 1867.

" Witnesses:
    " C. VARNER,
    " B. A. NALLEY.

                                           his
                              JOHN  X  CHISM."
                                         mark

The notes actually given do not correspond with the notes described in the bond, the first note given being for only $438⅛.

The plea of the defendant to which the first exception was taken explained the matter in this way:

Chism, before the sale to defendant, had sold the same land to one Black, who had put improvements upon it of the value of $500. They then rescinded the sale, Chism agreeing to account for the value of the improvements.

Defendant then purchased the land at $2 per acre, which would amount to $2,214; but it was agreed that defendant was to pay Black for the improvements, and for this he was to have a clear title to one hundred and seven acres of the land, which, at the agreed price, would amount to $214, and the remainder of the payment to Black was to go as a credit on the first payment or note.

The bond, however, in its present form, had already been drawn by one Nalley, and three notes, each for $666⅔.

Estell refused to sign the notes until the proper credit was allowed upon the first one, and it was finally agreed that the first note should be drawn as it now stands, for $438⅛.

But no separate deed was drawn for the one hundred and seven acres of land, it being supposed by the parties that the bond for the whole tract would answer the same purpose.   Now, even if we

admit that the court erred in its ruling, it is not probable that Estell was injured. By his own showing he was to pay $2,214 for the land. The notes which he executed, when added together, amount to $1,771.66⅔, which, when subtracted from the former, leaves about $443, or nearly the sum which he was to pay for the improvements. The testimony renders it probable that this was the agreement.

The second and third exceptions which were sustained by the court related to those parts of the answer which set up the existence of certain outstanding titles as was done in the original answer.

The objection to the pleading was, that it did not allege that these outstanding titles were superior to that conveyed to the defendant by Chism.

In our opinion this objection was entirely without foundation, and the court erred in sustaining it.

We may remark that as Cole purchased with full knowledge of the rights of Estell, anything which would be a good defense against Chism would be good against him. Story's Eq. Juris., secs. 395, 396.

Estell did not hold under a deed of conveyance. His contract with Chism was executory; the instrument was in substance and effect, as well as in name, a bond for title.

Under these two classes of contracts, the rights of a vendee are widely different.

Under the former, if he would resist the payment of the purchase money, he should allege and show, beyond a doubt, that the title has failed in whole or in part, and that there is danger of eviction; but under the latter he need only allege and prove that the title is defective, unless he understood the facts at the date of his purchase and agreed to take such title as the vendor could give. And the proof of these latter facts is to be made by the vendor. Cooper v. Singleton, 19 Tex., 260; Rawle, Cov. for Title (4th ed.), pp. 41, 42, 565.

The last named writer uses this language: "It is familiar that the general principles of the contract of sale, both in this country and in England, recognize and enforce, while it is executory, the right of a purchaser to a title clear of defects and incumbrances. This right is one not growing out of the agreement of the parties, but which is given by the law; and it naturally follows, that a court of equity will not decree a specific performance of a contract where the title is bad, or even as it has been said in modern times, where it is doubtful." P. 42.

This language is cited with approval by Mr. Justice Wheeler in Vardeman v. Lawson, 17 Tex., 16.

Soon after the suit was brought, Estell in his answer set up the adverse claim under the Moreno grant, and asked that his vendor, Chism, and the claimants under that grant be made parties. Chism in his answer admitted that the Moreno grant was a cloud upon his title, and asked that the holders of that grant be made parties. They appeared, and, being non-residents, sought to remove the case to the federal court. But they were dismissed upon the motion of the plaintiff. The supreme court, upon appeal by Estell, said that the answer sufficiently excused the failure to pay, to prevent (if true and unrebutted by other facts) the forfeiture claimed. Estell v. Cole, 52 Tex., 170.

While the appeal was pending in the supreme court, Estell was defending in the federal court this title against the claimants under the Moreno grant. We take it that his pleadings in this cause not only notified Chism of the hostile claim, but amounted to a call upon him to defend the title. In the federal court judgment was rendered against Estell, and he bought his peace by a compromise, and thus silenced the opposing claim.

This was done before the plaintiff filed his amended pleadings upon which the last trial was had. In these pleadings the plaintiff makes no allusion to these opposing claims, nor does he introduce any evidence concerning them. Chism, in his amended answer, withdraws his former pleading above alluded to and joins in the plaintiff's prayer against Estell.

And when Estell in his amendment set up these facts and asked that he be allowed, as a credit upon his notes, the necessary expense of extinguishing the opposing claim, the court excluded that part of the answer upon exception by the plaintiff.

In this, we think, the court erred. From the character of the contract between Chism and Estell; from the representations made by the former at the time of the sale, that the title was clear and unembarrassed, our opinion is that it was his duty to make good his representations and clear up the title. Upon his failure to do so, we think equity would allow to Estell a reasonable compensation for doing what should have been done by his vendor. Roberts v. Lovejoy, 60 Tex., 253, and cases cited.

It has been held that, when a vendee holding under a deed with general warranty is evicted, and brings suit upon the covenant of warranty, he cannot recover attorneys' fees " when there is no question of fraud, imposition or malicious conduct involved." Turner v. Miller, 42 Tex., 421.

As it does not appear that there was, in this case, any intentional

fraud practiced by Chism upon his vendee, it is probable that attorneys' fees should not be allowed, but costs and other necessary expenses should be.

The plaintiff below insisted in that court — and he presents the same views here — that Estell had forfeited all claim to the land; that he was insolvent and unable to pay; and that his allegations of outstanding titles were only pretexts to enable him to hold on to the land as long as possible. This view of the case is not sustained by the record.

There is no legitimate evidence that the contract was ever abandoned by Estell or rescinded by Chism. It is shown, indeed, that the notes were not paid at maturity; but it is also abundantly proven that the vendor indulged the non-payment for more than a year after the maturity of the last note.

He thus waived his right to declare the contract forfeited without giving notice of such intention to the vendee. Tom v. Wollhoefer, 61 Tex., 277; Scarborough v. Arrant, 25 Tex., 129; Secrest v. Jones, 21 Tex., 121.

Chism testifies that he never rescinded the contract, and that when he sold to Cole he distinctly notified him that he must take his chances of getting possession.

Cole was a near neighbor of Estell and knew all about the contract.

A short time before his purchase he was present when an agent of Chism called on Estell for a payment in cotton. Estell had cotton, but had been advised by his counsel that it would not be safe to turn it over unless the notes were indorsed or the agent had a power of attorney. Reese v. Medlock, 27 Tex., 120.

At that time Estell told the agent to have the notes indorsed, or get a power of attorney authorizing him to receive the cotton, and in the presence of Cole put United States revenue stamps on the notes which until then had been neglected.

Immediately afterwards Cole obtained a deed from Chism, got possession of the notes, and the first intimation Estell had of the supposed forfeiture was the offer of the notes to him by Cole and a demand made for possession of the land.

Nor is there any truth in the allegation that he was insolvent. He had ample means, he had made large improvements on the land, and he relied on the leniency of Chism, who, he believed, would take no action against him without giving him notice.

The court permitted the plaintiff to testify to certain statements as made by Chism after his sale to Estell, that the latter had prom-

ised to surrender the place to him. The defendant objected to the evidence and took a bill of exceptions.

The evidence was clearly inadmissible, and it should have been excluded.

The cases cited by appellee (Jones *v.* McCoy, 3 Tex., 349, and Garahy *v.* Bayley, 25 Tex. Sup., 295) are not in point.

The court erred also in permitting the plaintiff to prove that Estell had cut a large amount of timber upon the land.

The record does not show that the plaintiff had such an interest in the land as would authorize him to complain of the acts of Estell in the premises.

There are numerous errors in the charge of the court which we need not particularize, as they relate, in the main, to the subjects which we have already discussed.

Nor is it possible to notice the numerous assignments of error without extending this opinion beyond reasonable limits.

Upon the whole case, our opinion is that, as against Estell, the plaintiff acquired by his purchase no rights which could not have been asserted by Chism.

As the purchase money notes given by Estell for the land appear to have been deposited in the court below, he is entitled to have credited upon those notes —

1st. The reasonable and necessary expenses incurred by him (not to include attorneys' fees) in the defense of the title.

2d. The sum of $500 paid by him upon the execution issued under the former judgment, with the costs of collection. And when money has thus been paid out the credits should be entered as of the dates of payment.

3d. The reasonable value of the rents of the land from time when the plaintiff took possession in 1874, including the value of his (Estell's) labor in planting and cultivating the land in the early part of that year.

We are also of opinion that the plaintiff should not recover for improvements placed by him upon the land.

A decree should be entered giving him a reasonable time to pay into court whatever additional sum may be due upon the notes, and upon its payment the title should be vested in him and a writ of possession should be awarded.

The judgment should be reversed and the cause remanded.

Reversed and remanded.

[Opinion adopted December 12, 1884.]