## CHAMPION v. TAYLOR et ux.    (No. 1775.)

(Court of Civil Appeals of Texas. Amarillo. March 16, 1921.)

**1. Vendor and purchaser ⟨⟩143—Purchaser, who failed to point out defects in title, bound to make payment within time fixed.**

Where a contract providing for consummation on or before a fixed day required the purchaser to deposit a sum of money in bank, the same to be applied as part payment if the title proved good, and he complied with his agreement, and to be forfeited as liquidated damages in case of nonperformance, the purchaser, who agreed to accept an abstract in the hands of an attorney, or waived delivery altogether, and failed to point out any defects in the title within the time required, will not be excused from making payment at the time the contract required; it appearing that the purchaser, instead of making the deposit in the bank, gave the vendor a check for the amount.

**2. Vendor and purchaser ⟨⟩335 — Purchaser who has made part payment and defaulted cannot recover the same back.**

Where a purchaser made part payment and then defaulted, he cannot recover back such payment.

Appeal from District Court, Clay County; H. F. Weldon, Judge.

Action by W. H. Champion against R. U. Taylor and wife. From a judgment for defendants, plaintiff appeals. Affirmed.

Taylor, Allen & Taylor, of Henrietta, for appellant.

Wantland & Dickey, of Henrietta, for appellees.

HUFF, C. J. On the 3d day of February, 1919, R. U. Taylor and wife entered into an agreement with W. H. Champion, to sell a certain 300-acre tract of land in Clay county, agreeing to furnish a complete abstract of title thereto within a reasonable time, not later than 30 days. Champion agreed to report in writing his objections to defects in the title, if any, within 30 days "hereafter," and the sellers should have a reasonable time to cure such defects. The consideration was recited to be $61 per acre, $56 in cash. The cash was to pay for the equity the sellers had in the land. Payment was to be made and the papers delivered—

"at office in Wichita Falls, Texas." "This contract shall be consummated and all things done and performed upon the part of each party on or before the 3d day of March, A. D., 1919.

"5. To insure the faithful performance of this contract, the party of the second part [Champion] herewith deposits with the Wichita State Bank, Wichita Falls, the sum of $500.00, with the following understanding: If the title to said land proves to be good and he complies with his contract, said money shall be applied as part of said payment, but if said party of

the second part shall fail or refuse to comply with his part of said agreement (provided the title to said land proves good) then the said sum of money shall be paid over by the said Wichita State Bank, at Wichita Falls, Texas, to the party of the first part (Taylor) and forfeited as liquidated damages for said nonperformance."

The title was to be good and merchantable, and in case there was any incurable or vital defect the agreement should be null and void and the deposit to be refunded.

The facts show the contract was signed at the residence of Taylor and wife. The testimony of Taylor and wife would justify a finding by the trial court: That after signing the contract appellant waived an abstract of title to the land, and expressed himself as satisfied with the title. The appellee told him the abstract of the land was in the office of Mr. McFarland, an attorney in Wichita Falls, and he could get the abstract from Mr. McFarland, but appellant said he did not want it. Mr. McFarland testified he had the abstract, and that Taylor instructed him to let Champion have it if he wanted it; that he was satisfied as to the title. That Champion never called on McFarland for the abstract or requested it of the appellees, or either of them. On the day the contract was executed appellee, instead of putting up $500 in the bank, as stipulated in the contract, gave the appellee his check for that amount, which was cashed on the 10th of February. There was indorsed on the face of the check the following: "For part payment on his land." The office referred to in the contract for consummating the trade is admitted by both parties to have been McFarland's office in Wichita Falls. The appellant never called on McFarland for the abstract or demanded the deed until after the 3d of March. On the 1st day of March he and McFarland went to the residence of Taylor. Champion went in the house, leaving McFarland in the auto, and asked Mrs. Taylor for Taylor. She told him, according to her evidence, that Mr. Taylor was at San Angelo, but would make the deed, and would send it back, and it would be in Wichita Falls the 3d, or he would send it to her, and she would bring it. She did go to Wichita Falls on the 3d, and went to the office of McFarland, which was the place she told Champion she would meet him. Champion did not come to the office, and she waited all evening for him. She went there to sign the deed, and would have signed the deed if he had been there and delivered to her the money. Mr. McFarland on that day was out of town, and didn't return until the 4th of March. Mr. Sonnemaker, who was in the office with McFarland, testified that Mrs. Taylor came to the office to sign the deed, that Champion was not present and did not come to the office, and that McFarland

was out of town. R. U. Taylor, while at San Angelo, had an attorney to prepare a deed, in accordance with the contract, signed and acknowledged it, and sent it to McFarland. The deed was in McFarland's office on the 3d of March, but on account of the absence of McFarland the envelope in which it was contained was not opened until the 4th, upon McFarland's return. R. U. Taylor also testified that he never had a conversation with appellant from the time the contract was signed until March 17th; that at that time appellant came to his place—

"and he said he thought he would come out and see what I would do. I says, 'In what way —what do you want me to do?' And he says, 'Well, of course I failed to comply with my part of the contract, and it wasn't my fault,' and went on to tell why. He said he was drilling a well at the time he made the contract, and when he completed it he would have about $16,000 coming to him. He said he had a hang-up, and had been fishing ever since, and had failed to complete the well, and get the money."

Appellant, on this point, testified:

"I told him I had a deal on, and I got that land to take care of that obligation, the payment on the land. That deal had gone through on the 17th of March. My man was ready."

He says it was not a fact the deal from which he expected to get the money to pay for Taylor's land on the 17th of March had not gone through and that he told Taylor so. Two hundred acres of the 300 acres contracted to be sold at the time the contract was executed was the homestead of appellees. The appellant says the abstract was not furnished him as contracted, and that, if the title had been shown as agreed to, he could and would have paid for the land as agreed upon; that the abstract was to have been furnished him, and the effect of his testimony is to contradict the waiver claimed by appellees; that at the time of filing the suit he was willing to waive the abstract.

The appellant brought this suit against appellees for specific performance of the contract, and if he could not specifically perform that he have judgment for the $500. The appellees answered by general denial and specially that 200 acres of the land was their homestead, and by reason of that fact the contract was void, and further, that they complied with the provisions of the contract, and that appellee neglected and refused to comply with the terms on his part and under the terms of the contract the $500 mentioned, and received by them, constituted liquidated damages, and appellant for that reason was not entitled to recover that sum. The appellant answered by supplemental petition that if 200 acres was the homestead of appellees they be required to designate the same, and that he have judgment for specific performance on the 100 acres in excess there-

of; that the sale was by the acre and at a price of $61 per acre, and tendered in his pleadings $5,600 for the 100 acres; and he also sued R. U. Taylor for damages for breach of the contract, refusing to convey the 200 acres, in the sum of $10,000, the difference in the contract price and the market value, etc. The appellees answered this plea by supplemental answer, that the homestead had been properly designated under the law, and further alleged, after signing the contract, it was mutually agreed the contract relating to the deposit of the $500 in the bank should be waived, and a check was delivered to appellees by appellant, and that in the event appellant breached his contract the same should be applied on the purchase price. And, further, that the abstract in the office of McFarland should be held there subject to the order of appellant, and that appellant waived the provisions with reference to furnishing the abstract by appellees, and further alleged they had complied with the provisions of the contract obligating them to deed the land, etc. The case was tried before the court without a jury. The trial court filed no findings of fact or conclusions of law.

The appellant asserts by the first assignment the judgment is erroneous because it is not supported by the evidence; by the second assignment that the judgment of the court is contrary to the law applicable to such cases, and that judgment should have been rendered in favor of the appellants. By proposition it is asserted the undisputed proof shows the appellant complied with the terms of the contract, etc.

[1] The assignments do not point out wherein the judgment is not supported by the evidence or wherein it is contrary to the law of this case. We are left largely to infer the propositions of law upon which the appellant relies to reverse the judgment. We think the evidence sufficient to show that appellees had an abstract of title in the office of McFarland, and that appellant agreed to accept it at that place as a compliance with the terms of the contract to furnish. Appellant did not call for this abstract, and did not point out any objections to the title, as shown thereby, at any time. He clearly had an abstract subject to his order. Such being the case, he was required within the time stipulated in the contract to point out his objections for correction, and, having failed to do so before the time limit, he cannot, under the circumstances of this case, base his action for specific performance or to recover damages upon a default in the failure to furnish an abstract. The evidence in this case strongly indicates he waived the provision with reference to an abstract showing title. In addition to the testimony of Taylor and wife, appellant's check, with the indorsements thereon by him that it was a payment on the land, indicates that he waived the abstract. Instead of putting up the money in the bank to await the result of an investigation of the title he paid the sum direct to appellees, accepting the title as good, it would appear. Lieber v. Nicholson (Com. App.) 206 S. W. 512. The abstract having been furnished or the waiver of its delivery in person, and accepting the abstract at the office of McFarland as a satisfaction of the contract therefor, the appellant was in default in failing to point out objections within the time specified, and will not be excused from paying the money at the time the contract required.

[2] Appellant was not at the place, and at the time agreed upon, to consummate the transaction, while the appellees were there with the deed, ready and willing to perform, and, he having failed to comply with his obligation, he is in no position to enforce specific performance, or to recover the money paid on the land. Under the terms of the contract, on such failure upon the part of appellant, appellees were entitled to the $500 as forfeited, for liquidated damages. Davenport v. Sparkman (Com. App.) 208 S. W. 658. In this case the check and other testimony shows the $500 was paid appellee as a part payment for the lands. It is well established that when a party has advanced money in part performance of a contract, and then stops and refuses to proceed to fulfill his stipulations, according to the contract, he will not be suffered to recover what has been advanced. It is said:

"It would be an alarming doctrine, that parties might violate their contracts because they choose to do so, and make their own infractions the basis of an action for money had and received." Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238.

There are, of course, certain equitable grounds which present exceptions to the above rule. The parties in this case apparently made time and place the essence of the contract, and appellant having failed to comply by either being at the place and at the time then tendering the money, as we understand, presents no ground in equity to specifically perform as to any part of the land, or to recover the money paid.

The judgment will be affirmed.