### HALL v. SHIRK.
### No. 3481.

Court of Civil Appeals of Texas. Amarillo.
Dec. 10, 1930.

Rehearing Denied Jan. 7, 1931.

Cooper & Lumpkin, of Amarillo, for plaintiff in error.

Lloyd Fletcher, of Amarillo, for defendant in error.

JACKSON, J.

This suit was instituted by F. A. Shirk in the district court of Potter county, Tex., against Kathaleen F. Hall and others, to recover the sum of $900 for the alleged breach of four separate contracts for the sale to plaintiff of four different lots of land; but as each contract contains the same stipulations

and involves the same questions, we shall consider the case as if there was but one lot and one contract. The plaintiff dismissed as to all the defendants except Kathaleen F. Hall, and the trial proceeded against her alone.

The contract here involved, with the exception of the parties, the lot contracted to be sold, the consideration recited, and the installments to be paid as the purchase price for the lot, is identical with the contracts, the breach of which was claimed in the case of Hall v. Arnett et al., heretofore decided by this court in an opinion reported in 31 S. W. (2d) 506.

We deem it unnecessary to restate in this opinion the pleadings which present the issues disposed of in Hall v. Arnett, supra, and here set out only the new and additional matters pleaded by the parties, which we deem necessary for a disposition of this appeal.

After pleading the ownership of the land, the platting thereof into lots, blocks, streets, and alleys, the designation of the land as the Gables addition to Amarillo, the obligation of the defendant to install public utilities and make certain improvements on the streets in said addition, and plaintiff's contract and the stipulations therein, to purchase a lot in said addition, he alleges that at the time of the execution of the contract for the purchase of the lot, there was an indebtedness of $40,000 owed by the defendant and secured by a lien against the entire addition in which plaintiff's lot was situated and of which he had no notice and did not learn until in May, 1927. That by the terms of his contract, the defendant was obligated to install systems of water, gas, lights, and telephones, and to gravel the streets of said addition and begin said improvements within six months after July 1, 1926, and to complete them within a reasonable time. That a reasonable time was three months after the beginning of such work for the completion thereof, all of which should have been done before May 1, 1927.

Plaintiff alleges that he paid all the installments on his contract to May 27, 1927, but on account of the indebtedness of the defendant and the lien against the land, her failure to install the public utilities and improve the streets in said addition as the contract provided, he refused to make further payments until and unless the defendant complied with the terms and conditions of the contract. He alleges the failure of the defendant to discharge the indebtedness and her failure to make the improvements required by the contract. That notwithstanding he tendered her all the installments due, she declared his contract forfeited, failed and refused to make him title or to comply with her obligations in the contract under which he purchased.

The defendant answered, in addition to what she pleaded in the case of Hall v. Arnett, supra, that plaintiff was bound and obligated under the terms of his contract for the purchase of the lot to make monthly payments on the purchase price on or before the 29th day of each month after the date of the contract, July 29, 1926, and that the defendant defaulted and wholly failed to make his payments for the months of June and July and repudiated and abandoned his contract, and that thereafter, on July 30, 1927, she canceled and terminated the contract, according to the provisions thereof, which she alleges.

A copy of the contracts involved are attached to and made a part of the pleadings of the parties.

The case was tried to the court without the intervention of a jury and judgment rendered in favor of the plaintiff for the sum of $713, with interest thereon at the rate of 6 per cent. per annum from date of the judgment and for costs, from which judgment Kathaleen F. Hall, hereinafter called appellant, by writ of error prosecutes this appeal.

The appellant by several assignments challenges as erroneous the judgment of the court because the contract stipulates that the purchaser shall pay 50 per cent. of the price before the seller is required to furnish an abstract showing merchantable title and convey the lot by warranty deed, and also provides that default in the payment of any installment of principal or interest when due shall cancel and terminate the contract, and the record shows conclusively that appellee defaulted in the payment of his installments before he had paid 50 per cent. of the purchase price, and on account of such default, the contract was canceled and terminated.

There is no statement of facts in the record, but the court filed his findings of fact, which are, in effect, that on June 16, 1926, Paul Clark purchased what he thereafter designated as the Gables addition to Amarillo, Tex., for the sum of $50,000, $10,000 of which was paid in cash and the balance evidenced by four notes, each for the sum of $10,000, and payable on or before three, six, nine, and twelve months after date; that on July 28, 1926, Paul Clark, as seller, by an instrument in writing, sold and agreed to convey to appellee, as purchaser, by general warranty deed, the four lots in controversy, as therein provided, each for the sum of $625, $50 cash and $575 payable in successive monthly installments of $15 each. The provisions of each contract material to this appeal stipulate:

"If said purchaser shall fail to make any of the payments of principal or interest as herein provided * * * he agrees to give immediate possession of said property and all amounts paid by said purchaser * * * shall be retained by the seller as liquidated damages and this contract shall thereafter be null and void and of no further effect, without any act on the part of the seller.

"Upon the payment of fifty per cent of the purchase price and the interest as herein provided, and upon the execution and delivery by the purchaser of the usual form of vendor's lien notes for the balance due as herein provided, together with deed of trust as additional security for same, said notes payable according to the terms of this contract, then said seller agrees and contracts to execute and deliver to said purchaser a general warranty deed to said property, reserving a vendor's lien to secure the payment of the above mentioned note and will furnish a complete abstract showing a good title to said property, free and clear of any and all encumbrances, except the general taxes for the year 1927 and any year thereafter and except all special assessments levied after this date and except liens of every kind and nature caused by or through the purchaser. All money paid on this contract to be refunded if title is not good and merchantable.

"The seller or his assigns agrees within six months from July 1, 1926, to begin the installation of public improvements, these improvements to consist of water, gas, lights, telephones and gravelled streets."

That the appellee paid to Clark the cash payment and the first monthly installment of the consideration; that on August 25th, Clark, by a written contract, sold to appellant the unsold lots in said Gables addition and the various outstanding contracts covering the sale of lots, including appellee's contracts. That thereafter, on August 31st, Clark executed to appellant his warranty deed which was made subject to the indebtedness and liens against said Gables addition and also assigned to appellant all the outstanding contracts for the sale of lots in said Gables addition, including appellee's lots. That after the sale and assignment of the contract by Clark to appellant, the appellee paid his regular monthly payments to appellant on each of his contracts until May 27, 1927. That about the middle of May, appellee first learned that there was an indebtedness secured by a lien on the lots he had contracted to purchase. That he did not, during June, 1927, tender payment of the amounts due for that month; that about July 10th he had Mrs. Black, who was an employee of the First National Bank, where the monthly payments had been made on his contract, to write appellant to find out if she would make him a deed to one of the lots for what he had paid and release him from his contracts. That appellant made no reply to this letter, but came to Amarillo in the latter part of July, and on July 30, 1927, canceled all the contracts of appellee. That at the time the appellant canceled said contracts, the appellee had not tendered the monthly payments for June or July, but soon after said cancellation, did tender such payments

to the bank, but they were refused after the cancellation of the contracts. That at the time appellee made his last payment in May, 1927, there remained an unpaid indebtedness of $20,000 against the property, $10,000 of which was held by the original vendor and $10,000 by the First National Bank, all of which was owned by the bank by a proper transfer on June 27, 1927. That about March 27, 1927, the appellant had a conversation with Mr. Fuqua of the First National Bank with reference to procuring releases upon individual tracts in cases where they were paid and reached some kind of an agreement on that subject. That the street improvements called for in the contracts of sale were never made. That there were no fraudulent representations made to appellee to secure the execution of the contracts.

■ Inasmuch as there is no statement of facts in the record but the trial court filed findings of fact and conclusions of law, we are not authorized to presume the existence of any facts not found in support of the judgment. Kimball et al. v. Houston Oil Co. of Texas et al., 100 Tex. 336, 99 S. W. 852; City National Bank of Corpus Christi v. Pope (Tex. Civ. App.) 260 S. W. 903.

It is uncontroverted in the record that the appellee failed to pay his monthly installments for June and July, at which time he had not paid 50 per cent. of the purchase price of the lots.

"A provision in a contract for the sale of land, where the price is to be paid in installments, that default in the payment of any installment shall cause the contract to become void, or give the vendor the right to terminate it, is for his exclusive benefit and gives him an election either to forfeit the contract or to treat it as continued in force and insist on its completion. But if he chooses to annul the contract on this ground, the rights of the vendee are at an end." 2 Black on Rescission & Cancellation (2d Ed.) 1125, § 440.

■ The appellant, after appellee's default in the payments of the monthly installments for June and July, acting under the provision of the contract so authorizing, canceled and terminated the contract, and unless appellee's default is justifiable, he is not in a position to maintain an action to rescind the contract and recover the money he had paid.

"A vendee will not be justified in rescinding the contract because of a want of title in the vendor or of defects in his title, existing at the time of the execution of the contract, or arising since then, if the vendor holds the title or has removed the defects in the title or objections to it when the time arrives for him to deliver it or when he tenders a deed." 2 Black on Rescission & Cancellation (2d Ed.) 1112, § 433.

194

"The right to rescind a contract on the ground of failure of performance by the other party, delay in performance, want or failure of title, insufficient or incomplete performance, breach of conditions or warranties, or other such causes, cannot be claimed by a party who is himself in default in the performance of any of the obligations imposed upon him by the contract. * * * A purchaser of land who is in default in his payments cannot claim a rescission of the contract for the vendor's failure to make a good title." 3 Black on Rescission & Cancellation (2d Ed.) 1363, § 553.

In order for the appellee to cancel the contract and recover the money he had paid thereon, he must put the appellant in default by paying 50 per cent. of the purchase price and complying with the independent covenants in his contract which he had obligated to perform. Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238; Pinkston v. Boyd, 43 Tex. Civ. App. 568, 97 S. W. 103; Williamson et al. v. Davey et al., 52 Tex. Civ. App. 353, 114 S. W. 195; Porter v. Memphis Land & Commission Co. et al. (Tex. Civ. App.) 159 S. W. 497; Champion v. Taylor (Tex. Civ. App.) 229 S. W. 627; Lieber v. Nicholson et al. (Tex. Com. App.) 206 S. W. 512; Silverman et al. v. Harmon et al. (Tex. Civ. App.) 250 S. W. 206; Loud v. Pomona Land & Water Co., 153 U. S. 564, 14 S. Ct. 928, 38 L. Ed. 823; Nicolopoolos v. Hill, 217 Ala. 589, 117 So. 185, 59 A. L. R. 185 and annotations 190, 194, 202.

It will be noted that the court expressly finds that no fraud was practiced upon appellee to induce him to enter into the contracts of purchase, and under the record and the foregoing authorities, before he could demand an abstract showing good title to the property and a warranty deed, he was required to pay 50 per cent. of the purchase price or show that appellant would not have been able to comply with her contract had he made such payments, or that she had already defaulted in some material obligation imposed upon her by the contracts.

The appellee alleges that he refused to make further payments by reason of the existing indebtedness and the failure of the defendant to complete the public utilities and gravel the streets, as provided for in the contract. He also alleges that three months was a reasonable time within which to complete all of said improvements. Under the contract, appellant had six months after July 1, 1926, to begin, and appellee defaulted on June 27, 1927. There is no finding by the court as to what would have constituted a reasonable time for the completion of the improvements and no finding that the improvements had not been begun, but the court does find that the street improvements had never been made. This finding we construe to mean that the street improvements had not been made according to the contract and not to mean that no effort had ever been made to gravel the streets. It was incumbent upon appellee to show that the appellant was in default by failing in good faith to begin and prosecute the work of making the improvements or that a reasonable time therefor had elapsed, at the time he defaulted in his monthly payments, to entitle him to recover the purchase money theretofore paid.

The appellant's contention that appellee's remedy was a suit for damages rather than for rescission and cancellation is without merit. Hausler v. Harding-Gill Co. (Tex. Com. App.) 15 S.W.(2d) 548; Powers v. Sunylan Co. et al. (Tex. Com. App.) 27 S.W.(2d) 129.

In our opinion the findings of fact by the trial court are not sufficient to warrant the judgment, and it is therefore reversed and the cause remanded.