## JACKSON v. LANGFORD.
### No. 3937.

Court of Civil Appeals of Texas. Amarillo.
April 8, 1933.

Rehearing Denied May 17, 1933.

Conner & McRae, of Eastland, for appellant.

Turner, Seaberry & Springer, of Eastland, for appellee.

JACKSON, Justice.

The appellant sued appellee in the district court and alleged that he owned one-sixteenth

of the oil, in, under, and produced from a certain 40-acre tract of land located in Eastland county, Tex. That appellee had produced therefrom 16,000 barrels of oil, the value of which was $32,000. That the 1,000 barrels thereof, owned by appellant were of the value of $2,000 and had been converted by appellee to his own use.

The appellee answered by general demurrer, general denial, plea of not guilty, and alleged that by agreement the said forty-acre tract had been partitioned among the owners, the acreage divided, and appellant received and accepted a certain 14 acres thereof and relinquished all his right to the part of said 40 acres from which the oil in controversy had been produced. That, if said agreement was insufficient as a partition of said acreage, then the subsequent transactions of the parties and the acquiescence of appellant therein constituted a partition and estopped appellant from denying the validity thereof.

By way of cross-action the appellee asked that the cloud cast upon his title by appellant's claim be removed, and that he recover the sum of $827.53, which sum appellee charged had been wrongfully paid to appellant by the United Producers' Pipe Line Company.

At the close of the testimony, the court directed the jury to return a verdict against appellant for the value of the oil he claimed to have been converted by appellee and to find in favor of appellee for $827.53 on his cross-action. A verdict was returned in accordance with this instruction, and in compliance therewith the court entered judgment, from which this appeal is prosecuted.

The appellant presents as error the action of the court in directing a verdict against him, because the pleadings and testimony presented issues of fact which he was entitled to have submitted to the jury.

It is agreed that J. W. Langford was the common source of title.

The record discloses that J. W. Langford, the appellee, and his wife, on April 16, 1917, executed to J. W. Lynch an oil and gas lease covering 125 acres of land out of the William Maxwell survey in Eastland county, conveying to him seven-eighths of the oil and gas in, on, and under said land, reserving to themselves one-eighth thereof.

On January 31, 1918, J. W. Lynch assigned his leasehold interest in the land to the States Oil Corporation.

On November 15, 1918, appellee and wife conveyed by warranty deed to Frank Traywick 40 acres of the tract theretofore leased to J. W. Lynch.

On December 21st thereafter Frank Traywick and wife conveyed to I. N. Jackson, the appellant, by mineral deed, one-sixteenth interest in and to the oil, gas, and other minerals produced from the 40 acres of land that appellee and his wife had conveyed to Frank Traywick.

This mineral deed was made subject to the original lease to J. W. Lynch and included one-half of the royalty to be paid under the terms thereof, and stipulated that, if said lease was canceled or forfeited for any reason, that all future rentals "shall be owned jointly by grantors and grantee, each owning the proportional one-half interest in all oil, gas and other minerals in and upon said land, together with the proportional one-half interest in all future rents."

On May 3, 1919, Frank Traywick and wife, by warranty deed, conveyed to the appellee the 40 acres of land theretofore conveyed to them by appellee, subject to the oil and gas lease, but included "all royalties under said lease not heretofore sold and conveyed by grantor herein."

By virtue of these instruments the appellant and appellee each owned in the 40 acres of land involved in this controversy one-half of the one-eighth royalty reserved by appellee and his wife in the original oil and gas lease executed by them to J. W. Lynch.

On May 10, 1919, the appellee, in behalf of himself and his several minor children (his wife having died), instituted suit in the district court against the States Oil Corporation to cancel its lease. This suit was compromised and judgment entered confirming the lease in the States Oil Corporation, but requiring that said corporation assign to Carl P. Springer, as trustee for the interested parties, the east 60 acres of the 125-acre tract.

In obedience to this compromise judgment, the States Oil Corporation, on September 27, 1919, assigned to Carl P. Springer the east 60 acres covered by its lease, in which was included the 40 acres in this controversy.

At the time the suit was instituted against the States Oil Corporation and the judgment entered therein, the appellee was and still is the survivor and qualified administrator of the community estate of himself and his deceased wife.

Carl P. Springer testified to the effect that he is the lawyer employed by appellee to sue for the cancellation of the lease held by the States Oil Corporation and was to receive for his services one-third of the recovery. That some other lawyers were associated with him. That the suit, the settlement thereof, the judgment therein, and the assignment from the States Oil Corporation to him involved only the interest covered by the lease and did not include the one-eighth royalty interest originally reserved by appellee in the lease. That he did not meet appellant and knew nothing of his interest until after said judgment was entered. That he had pending a sale for the acreage assigned to him at a consideration of $3,000 per acre, and appellant came to his office with his mineral deed and

contended that the judgment canceled the lease on the 60 acres assigned to witness and claimed the royalty in the 40 acres covered by his said deed. That he acquiesced in this contention, advised appellant of the pending sale, but he refused to join therein, stating he was going to sell his own property and wanted his acreage set aside. That court had not adjourned and appellant intervened therein, and the said sale of the acreage by witness was not consummated. That thereafter it was agreed that the witness should retain 6 acres of the 20-acre interest claimed by appellant and assign him 14 acres, provided said 14 acres should be located so as not to interfere with the 10-acre tract the witness had sold to Barney Carter for $30.000, and a 5-acre tract sold to one Gibbs. That appellant's lawyer dictated an assignment to appellee, which was executed. That the 10 acres was assigned by witness to Barney Carter with the knowledge of appellant, who never claimed or received any part of the consideration. That "the consideration was, as Mr. Jackson contended, that by virtue of owning that royalty—the lease being cancelled, he was entitled to eight-eighths of the oil in place of one-eighth of the oil and I recognized his rights, thought he was entitled to it; Judge McRae convinced me that he was entitled to it and I made the assignment. I did not know Jackson before that, never heard of him." "Q. And in turn Jackson permitted you to go ahead and sell the balance of it and take the money as your part and Langford's part? A. He did not object. I told him I was selling to Carter and Gibbs and he never said anything; said he wanted his fourteen acres to himself so he could handle it as he saw fit." That after the 14 acres was assigned to appellant, the witness made assignments to portions of the remainder of the 60 acres to several different assignees and retained a part of the 40 acres involved upon which they made a drilling contract on which producing wells were drilled and from which the oil in controversy was produced.

Mr. Langford testified substantially, as did Mr. Springer, that appellant wanted his acreage set aside so he could handle it himself, and said, "If we would set aside fourteen acres to him, he would take that and let us have the rest of it." That appellant paid no money for the assignment to him of the 14 acres.

The assignment was executed by Carl P. Springer, J. W. Langford, and F. Traywick, states that appellee was acting for himself and as community survivor of the estate of himself and deceased wife, and recites that, for the consideration of $1 and other good and valuable considerations paid, they "have bargained, sold, transferred and assigned, and by these presents do bargain, sell, transfer and assign unto the said I. N. Jackson, all our right, title and interest in and to said lease above described, in so far as it covers fourteen acres described as follows." And then gives the metes and bounds of said 14 acres.

The assignment does not purport to convey to appellant appellee's one-half of the one-eighth royalty which he reserved in the original lease to J. W. Lynch, but assigns only the interest "in and to said lease," and the lease covered but seven-eighths of the oil and gas rights in the 125 acres. In the transaction no written conveyance was requested of appellant, and apparently none expected, and he executed no instrument transferring any of his interest in said 40 acres or in any part thereof.

■ It was reversible error for the court to direct a verdict: "If, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Gross v. Shell Pipe Line Corp. (Tex. Civ. App.) 48 S.W.(2d) 377, 378, and authorities cited. To the same effect is Jones et al. v. Jones (Tex. Civ. App.) 41 S.W.(2d) 496, and authorities cited.

■■ It is a significant circumstance that appellant made no transfer and was requested to make no transfer of his interest to Carl P. Springer and his associates. The recitations in the muniments of title found in the record were admissible and constitute "prima facie evidence of the truth of the facts recited as between the parties to the instrument," 17 Tex. Jur. page 801, and, "of the amount of the consideration and the payment of same" and "are sufficient proof if not refuted by other evidence." 17 Tex. Jur. page 679. See, also, Jackson v. United Producers' Pipe Line Co. et al. (Tex. Civ. App.) 33 S.W. (2d) 540; Seaton v. White et al. (Tex. Civ. App.) 50 S.W.(2d) 874. The appellee, to refute this evidence, relies on the testimony of himself and his attorney. In our opinion the record presents issues of fact to be determined by the jury, and the court erred in directing a verdict both against appellant's recovery and in favor of the appellee on his cross-action.

We deem it unnecessary to discuss the other assignments, because, if error is presented, it will probably not occur on another trial.

The judgment is reversed, and the cause remanded.