PEVEHOUSE v. OLIVER FARM EQUIPMENT SALES CO. et al.

No. 4866.

Court of Civil Appeals of Texas. Amarillo.

Feb. 28, 1938.

Rehearing Denied March 28, 1938.

Griffin & Morehead, of Plainview, for appellant.

Chrestman, Brundidge, Fountain, Elliott & Batemen, of Dallas, and Dennis Zimmermann, of Tulia, for appellees.

JACKSON, Chief Justice:

The appellant, W. L. Pevehouse, instituted in the district court of Swisher county an action in trespass to try title against the corporate appellees, Oliver Farm Equipment Sales Company, Distributors Investment Company, and the Southern Rock Island Plow Company, to recover section 33 in block B–3, in said county.

In the alternative, the appellant, in addition to the action of trespass to try title, set out his title specially attached to and made a part of his petition as exhibits the contracts and agreements through which he deraigns title, and according to such exhibits he held his title subject to $19,200 evidenced by twenty notes payable to Hickman Price and secured by a lien against the

land. He alleged that appellees, according to his information, claimed to own the land involved by virtue of a certain attachment lien, the foreclosure thereof, and a purchase under execution, but avers his claim is superior to any and all claims of appellees, who acquired whatever title they assert with full notice and knowledge of his rights. He prays under the second count that the cloud placed on his title by the claim of appellees be removed.

The Oliver Farm Equipment Sales Company answered by general denial, plea of not guilty, and alleged that if appellant ever acquired any right or interest in the land by reason of the contracts and agreements alleged in the second count of his petition, he had waived and forfeited such right and interest by defaulting in the payment of the purchase price of the land and the taxes thereon for which he was liable under his contract; that this appellee owns and holds the legal title free and clear of any right, incumbrance, or equity of appellant, because in addition to his default his right, if any he has, is subject to the twenty vendor's lien notes, which he is obligated to pay Hickman Price; that said notes have not been paid, and it is the present legal and record owner of said section of land under valid court proceedings, and such ownership includes the vendor's lien notes which it acquired by virtue of said proceedings.

Each of the other appellees answered alleging a separate judgment against Hickman Price, the amount thereof, that such judgments were unpaid, but were subject to the lien of the Oliver Farm Equipment Sales Company. Owing to this admission and the judgment in this case, it is unnecessary for a further statement of their pleadings.

At the close of the testimony, in response to a peremptory instruction, the jury found in favor of the appellees, and judgment was entered that they go hence without day with their cost, and that appellant take nothing by this suit.

The appellant challenges as error the action of the court in directing a verdict against him, contending that the testimony shows he held the land under a contract of purchase, which evidenced the part of the consideration unpaid; that he was in possession thereof, using and cultivating it at and prior to the time the attachment was levied and the judgments abstracted and recorded, under which appellees had purchased at execution sale; that they had no-

tice of his interest, and, therefore, he had as to them the superior title.

The testimony discloses that on April 14, 1930, Hickman Price, acting for Price Bros., entered into a contract, in which they are designated as sellers, by the terms of which M. E. Courtney, designated therein as buyer, purchased section 33, block B–3, in Swisher county, for a consideration of $22,400, to be paid as follows: $500 in cash, $2,700 by August 1st, thereafter, and the remainder of $19,200 in twenty equal annual installments of $960 each. The seller agreed to furnish abstract of title for examination and approval, execute a warranty deed to the buyer, which with the contract and the twenty vendor's lien notes were to be deposited in the First National Bank of Plainview, Tex., to be held in escrow until one-half of the purchase price had been paid, at which time the deed was to be delivered to the buyer and the notes to the seller. The forfeiture clause in the contract will be later quoted. Courtney, after the abstract was examined, accepted the title, the deed and notes were executed, the $500 and the $2,700 paid to the sellers, and all the papers placed in escrow as agreed.

On July 21, 1930, M. E. Courtney, by written contract in which he is referred to as first party, bargained and agreed to sell and caused to be conveyed unto W. L. Pevehouse, referred to as second party, said section 33, block B–3, for and in consideration of $22,400, $3,200 cash, which was paid, and the assumption of all covenants and agreements made by M. E. Courtney in his contract with Price Bros., including the payment of the twenty vendor's lien notes of $960 each according to their terms and provisions. The contract, together with a sufficient warranty deed from Courtney to Pevehouse, was by agreement deposited in the First National Bank of Plainview and held in escrow.

The testimony is that in compliance with this contract, Pevehouse, the appellant herein, took possession of the property under his contract, put some improvements thereon, consisting of fencing, windmill, sod breaking, and each year after 1930 had a garden near the windmill, and cultivated and used the land and made crops thereon, except when on account of droughts the crops failed. The appellant testified that he had never recognized Mr. Price as a landlord since his purchase; that in August, 1931, he was unable to meet the payment due, but negotiated with Mr. Price for

an extension, which he obtained, for one year by the payment of $750 to be credited on his contract; that in the fall of 1930 after he bought the land, he told C. L. Cox of purchasing the section and the next day Cox came to the place and had a conversation with him about the price, the terms, and conditions on which he purchased; that in 1932, about the time he began harvesting, Cox was again on the section and requested Pevehouse to come into town the next day, which he did; that he went to the Cox & Thompson Hardware Store, and a man, who Mr. Cox advised him was representing the Oliver Farm Equipment Sales Company, was present and they asked Pevehouse what arrangements he had with Mr. Price relative to the payment of the notes on the land; that he told them how the payments were arranged and the terms upon which he had bought the section; they asked him to sign some papers to tie up the Hickman Price payments on the section, but he refused, and they advised him they were going to tie up the land; that they had a judgment against Price, but if he would sign papers tying up the notes payable to Hickman Price they would give him any terms he wanted to pay for the ground.

On June 25, 1932, C. L. Cox and D. M. Thompson, a partnership firm in the mercantile business, had a suit pending in the district court of Swisher county against Hickman Price, and on that date caused a writ of attachment to be issued and levied upon the section as the property of Hickman Price. Cox and Thompson obtained judgment in said suit against Hickman Price for the sum of $7,247.75 on September 20, 1934. The judgment was sold to the Oliver Farm Equipment Sales Company in December, 1934, order of sale and execution issued September 3, 1936, and sale made to the Oliver people October 6, 1936, and conveyed to them by the sheriff. Mr. Pevehouse was present at the sale, and prior thereto gave notice of his rights and claims in the land.

The appellees assert that the court properly directed a verdict in their behalf, claiming the forfeiture stipulation in the contracts was self-executing, and that the admitted default on the installment due August 1, 1931, with the failure to pay the current taxes, terminated the contract as a matter of law, and after such default the appellant had no title, either legal or equitable, that would authorize a recovery by him under either count in his petition, but

if the forfeiture clause was not self-executing, and the contract terminated as a matter of law, then they say the testimony is conclusive that Mr. Price had exercised the right to forfeit the contract under said forfeiture provision.

The forfeiture clause relied on is as follows:

"The failure to make any payment, or to carry out any of the obligations of this contract resting on him as Buyer, shall immediately terminate this contract and all rights of the Buyer shall at once cease; and all moneys and/or payments theretofore made by the Buyer to the Sellers shall be applied by the Sellers as liquidated damages done by breach of this contract, and the Buyer hereby waives and renounces any and all claims to any of such money so paid.

"In the event of the termination or forfeiture of this contract, the Sellers are hereby given the right to immediately re-enter and take possession of said premises, and the Buyer hereby binds himself, his heirs and assigns to immediately quit and surrender possession of such property to the Sellers and/or their agents, assigns or legal representatives."

The First National Bank of Plainview, which held the papers in escrow, closed September 12, 1931, went into the hands of a receiver, and there was no other bank in Plainview until in February, 1932. Some time between September 12, 1931, and June 25, 1932, the date the writ of attachment was issued and levied, Mr. Courtney and Mr. Price went to the receiver of the bank and secured the escrow papers evidencing the sale to Mr. Courtney and his sale to Mr. Pevehouse. Mr. Price placed all of the papers in his safe where they remained until about three weeks before the trial of this case, but at the time of getting the escrow papers from the receiver, Mr. Pevehouse was not present and nothing was said about ending the contract. Inasmuch as Mr. Courtney had sold his rights to the appellant, any consent of his, had it been made, to terminate the contract would not have been binding on appellant. The testimony further is that Mr. Pevehouse, prior to the date the escrow papers were obtained from the receiver, paid on the indebtedness the sum of $750, which Mr. Price accepted and agreed to extend the payment due August 1, 1931, until August 1, 1932.

A stipulation in a contract for the sale of land providing a forfeiture of the

rights under the contract for default in an installment payment may be self-executing, but the law does not favor forfeitures, and such clauses are for the benefit of the grantor. Hall v. Shirk, Tex.Civ.App., 35 S.W. 2d 191. It is also true that as a general rule a forfeiture does not take place automatically.

In Wall v. Texlouana Producing & Refining Co., Tex.Civ.App., 241 S.W. 521, 522, the forfeiture clause there considered was as follows: "It is hereby agreed and understood that in case party of the second part fails to make the payments as above provided, or fails to begin the drilling of said well as herein stipulated, then and in that event all moneys theretofore paid for said oil and gas lease shall be forfeited, and this contract shall be null and void."

In construing this clause, Chief Justice Huff, speaking for this court, said:

"By the contract it is declared upon default by the grantee the money paid shall be forfeited and the contract 'null and void.' This does not mean it should be absolutely void and of no force or effect. The Supreme Court of the United States, in construing a provision of like import, held:

" 'The condition plainly is for the benefit of the vendor, and hardly less plainly for his benefit alone, except so far as it may have fixed a time when Stewart might have called for performance if he had chosen to do so, which he did not. This being so, the word "void" means voidable at the vendor's election, and the condition may be insisted upon or waived, at his choice.' Stewart v. Griffith, 217 U.S. 323, 30 S.Ct. 528, 54 L.Ed. 782, 19 Ann.Cas. 639."

This case was affirmed by the Supreme Court of Texas in 257 S.W. 875. See, also, Black on Recession and Cancellation, 2d Ed., page 1125, par. 440; 43 Tex.Jur. 347; 66 C.J. 716.

In our opinion, these authorities determine adversely to appellees their contention that default in the payment of the current taxes and the payment due August 1, 1931, forfeited, as a matter of law, all rights of appellant in the land. The language of the forfeiture clause of a contract must be impelling to require a grantor to accept such forfeiture against his will, and we are convinced that the forfeiture clause in this contract did not inhibit an agreement between Mr. Pevehouse and Mr. Price the effect of which would result in a waiver thereof.

Neither is the assertion of appellees that the testimony conclusively shows Mr. Price had exercised his option to terminate the contract supported by the record.

In addition to the evidence that an agreement for the extension of the time of payment was granted and a partial payment accepted, which indicate waiver, Calvin et al. v. Olschewske, Tex.Civ.App., 62 S.W.2d 574, affirmed, Boddeker v. Olschewske, 127 Tex. 598, 94 S.W.2d 730, the record tends to show that the appellant had never abandoned the contract and that Mr. Price had never rescinded it, Estell v. Cole, 62 Tex. 695; that appellant was permitted to remain in possession, improve and occupy the property, Albright et al. v. Hoyt et al., Tex.Civ.App., 57 S.W.2d 342; that no demand was made by Mr. Price for the past due installments, and no notice given by him of an intention to rescind, Boddeker et al. v. Olschewske, 127 Tex. 598, 94 S.W.2d 730. See annotations 107 A.L.R. 345, following the case of Johnson v. Feskens.

In our opinion, the law did not, under the record, compel a termination of the contract, hence, waiver became a fact issue and should have been submitted to the jury, and if they found Mr. Price had waived his right to terminate the contract he would then be required to give notice to appellant in order to restore the right of forfeiture. 43 Tex.Jur. par. 201, page 352.

After the attachment was levied, the judgments recorded, and the land sold to appellees, the appellant was justified in declining to pay any additional installments until it was determined to whom he should make such payments. Estell v. Cole, supra.

Under the contract contained in the papers placed in escrow and the partial payments made, appellant, as grantee, had, pending the performance of the conditions of the escrow contract, an equitable title to the property. Alworth et al. v. Ellison, Tex.Civ.App., 27 S.W.2d 639, and authorities cited. The escrow papers constituted a contract of sale, but did not pass the legal title to the appellant. Dimmitt Elevator Co. v. Carter et al., Tex.Civ.App., 70 S.W.2d 615; Dayle L. Smith Oil Co. v. Griffin, Tex.Civ.App., 104 S.W.2d 167. He could not, under the terms thereof and the payments which had been made, demand the delivery of his deed, and we are of the opinion that the legal title, which remained in the grantor, Mr. Price—subject to the equitable rights of appellant—could be and was reached by the attachment lien.

We do not find where the Texas courts have announced this doctrine, but this is apparently the rule which prevails in a majority of the jurisdictions.

In Freeman on Judgments, 5th Ed., Vol. 2, page 2033, par. 964, the author says: "Since the vendor in a contract of sale ordinarily retains the legal title and a substantial interest until payment made and the conditions of the contract are performed by the vendee, generally his interest is subject to the lien of a judgment against him."

In 34 C.J. 598, par. 916, the writer says: "While in a few jurisdictions when an owner of land has entered into an executory contract of sale no lien is acquired by his judgment creditors against the vendor's interest in the land, especially where the vendee has entered into possession, the rule generally followed is that a judgment recovered against a vendor of land after the execution of a contract for its sale, but before the making and delivery of a deed, is a lien upon the legal title remaining in him and binds the land to the extent of the unpaid purchase money."

In 15 R.C.L. page 803, par. 263, it is stated: "The interest of a vendor in lands contracted to be sold is bound by the lien of a judgment recovered against him while the contract is unexecuted to the extent to which it is unexecuted."

Among the authorities supporting the rule announced by these authors, we note May v. Emerson, 52 Or. 262, 96 P. 454, 16 Ann.Cas. page 1129; Coggshal v. Marine Bank Co., 63 Ohio St. 88, 57 N.E. 1086; Reid v. Gorman et al., 37 S.D. 314, 158 N.W. 780; West Virginia Pulp & Paper Co. et al. v. Cooper, 87 W.Va. 781, 106 S.E. 55; Lambert v. Allard et al., 126 Me. 49, 136 A. 121; 66 C.J. page 1063, Sec. 833. Many others are collated in each of the above text books. As to the respective rights of the vendor and vendee, see Freeman on Judgments, 5th Ed., Vol. 2, page 2026, par. 965.

The appellees claim that the peremptory instruction given by the court in their behalf was justified, since the testimony shows they were innocent purchasers.

■ The three elements necessary to constitute an innocent purchaser are: The payment of a valuable consideration, the absence of notice, and the presence of good faith. Strong v. Strong, Tex.Com.App., 98 S.W.2d 346, 109 A.L.R. 739.

■ We shall refrain from any extended discussion of the testimony on the question of notice, but, in our opinion, the evidence of the possession, occupancy, cultivation, and improvement of the property by appellant and his testimony relative to the presence of Mr. Cox on the place, and his conversation with him and a reputed representative of the Oliver Company, although controverted, presents notice, as a fact issue which should be submitted to the jury.

In Dollahite-Levy Co. v. Phillips et al., 99 S.W.2d 688, 690, this court says: "It is also the settled law that the court should not direct a verdict 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' Dendy v. Cockerham et ux. (Tex.Civ.App.) 82 S.W.(2d) 756, 758, See, also, Texas Employers' Ins. Ass'n v. Ritchie (Tex.Civ.App.) 75 S.W.(2d) 942; Jackson v. Langford (Tex.Civ.App.) 60 S.W.(2d) 265; Gross v. Shell Pipe Line Corp. (Tex.Civ.App.) 48 S.W.(2d) 377; and Bowers v. Bowers [Tex.Civ.App., 99 S.W.(2d) 334] supra."

■ The appellant assails as error the action of the trial court for excluding, on the objection that it was irrelevant and immaterial, the evidence of several witnesses, each of whom would have testified in substance that he knew the general reputation, in the community, of the ownership of the land, and that by such general reputation Pevehouse was the owner. This testimony was admissible, we think, under the holding of Berry et al. v. House et al., 1 Tex.Civ. App. 562, 21 S.W. 711; Houston Oil Co. of Texas v. Choate et al., Tex.Com.App., 232 S. W. 285; Galbraith et al. v. Howard et al., 11 Tex.Civ.App. 230, 32 S.W. 803. But the rule announced in these cases was reviewed at length recently by Judge Smedley of the Commission of Appeals in Strong v. Strong, 98 S.W.2d 346, 109 A.L.R. 739, in which the former holdings were, if not overruled, so modified as to render the testimony offered inadmissible.

■ The evidence of appellant, that he claimed the land as his own since the purchase thereof, that he had a conversation with Mr. Price during harvest of 1932 by which the time of the payment of his installments was again extended, that Mr. Price had never demanded possession and never told him that the contract was forfeited, was excluded on objections of appellees as was a letter from Price to Pevehouse dated Sep-

tember 7, 1933, relative to payments to be made in 1934, of the exclusion of which appellant properly complains. Under the conditions of this record and the authorities heretofore cited, this testimony should have been admitted.

The judgment is reversed, and the cause remanded.